ILLINOIS NATIONAL INSURANCE COMPANY, Plaintiff-Appellant, v. WALTER SZCZEPKOWICZ *et al.*, Defendants (Anna Banek *et al.*, Defendants-Appellees).*

First District (2nd Division) No. 1—88—2869

Opinion filed June 30, 1989.

---

*The only defendants to move for summary judgment against Illinois National Insurance Company in the circuit court, and file briefs as appellees in this case, are Anna Banek; Eugeniusz Banek, individually and as special administrator of the estate of Jacek Banek; and Kenneth Davis.

Gurion & Lewis, of Chicago (David W. Ott, of counsel), for appellant.

Doyle & Ryan, Ltd., of Chicago (John A. Doyle, of counsel), for appellees Anna Banek and Eugeniusz Banek.

James Dahl & Associates, of Chicago (James E. Dahl, of counsel), for appellee Kenneth Davis.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Illinois National Insurance Company (National) sought a judicial declaration determining the amount it was obligated to pay under a liability insurance policy for two lawsuits filed against its insureds. On cross-motions for summary judgment, the circuit court ruled against National. On appeal, National identifies as error the denial of its motion for summary judgment and the granting of defendants' cross-motion for summary judgment. There is no dispute as to the facts.

The complaint for declaratory judgment arose out of collisions involving a tractor-trailer unit driven by Walter Szczepkowicz and two

automobiles, a Lincoln Continental driven by Ken Davis and a Chevrolet driven by Jan Banek. The issue presented to the circuit court was whether the two collisions were one or two "accidents" for purposes of a certain liability insurance policy: if the two collisions constitute one "accident," National is obligated only to pay up to $300,000 for all injuries and damages arising out of the incident; if the collisions are two "accidents," National might be liable for up to $300,000 for injuries claimed by Davis, and an additional amount up to $300,000 for injuries to occupants of the Banek vehicle.

The collision occurred on October 1, 1983, on Illinois Route 41 in Lake County. The speed limit was 50 miles per hour. There were two northbound and two southbound lanes. Each lane was 12 feet wide. The northbound and southbound lanes were separated by a grassy median strip 31 feet wide. The median strip was intersected by a crossover lane 41 feet wide. On the date of the occurrence, there was fog in the area.

Szczepkowicz was driving a tractor-trailer unit with an inoperative left rear side clearance light on its trailer. He steered the tractor-trailer out of a private driveway on the east side of Route 41, entered the northbound lanes and proceeded west into the crossover. Due to traffic in the southbound lanes, he was forced to stop with the rear portion of his vehicle effectively blocking both northbound lanes.

At the same time, the Davis vehicle was proceeding northbound in the curb lane and struck the rear wheels of the stopped tractor-trailer. According to Davis, the tractor-trailer moved forward approximately 12 feet "almost immediately" after the collision, and then stopped again. At that point, according to the agreed statement of facts, Szczepkowicz failed to completely remove the vehicle out of all lanes of traffic; he did not back the tractor-trailer off the roadway, proceed into the southbound lane, or pull onto the median strip parallel with the road. Five minutes later, an automobile driven by Jan Banek and occupied by three passengers, his parents Anna and Eugeniusz, and now-deceased brother Jason (the Banek passengers), travelling in the left northbound lane, smashed into the side of the stopped tractor-trailer, forward of the rear wheel area which Davis previously had struck. At the time of the second impact, the rear wheels of the trailer were situated on the line dividing the two northbound lanes.

Davis, Jan Banek, and the Banek passengers separately brought lawsuits against Szczepkowicz, his employer, the owner of the tractor-trailer, and the owner of the property fronting Route 41 where the accident occurred. Pursuant to an insurance policy in effect on the date of the incident, National was required to defend Szczepkowicz,

his employer, and the owner of the tractor-trailer in the three lawsuits. National then filed the complaint for declaratory judgment against Davis, Jan Banek, and the Banek passengers to determine its potential liability in the various actions, and eventually moved for summary judgment; in response, Davis and the Banek passengers (appellees) filed cross-motions for summary judgment.

After a hearing, the circuit court initially found that there was no ambiguity or inconsistency in the effective insurance policy. Next, after a thorough discussion of case law, the circuit court concluded that two accidents occurred. Specifying two factors, a time element and a "continuum between impacts" concept, the court found that the second collision did not result from continuous or repeated exposure to substantially the same conditions; it then granted appellees' motions for summary judgment while denying National's motion. From this ruling, National appeals.

Although the argument is made to the effect that the policy defines "one accident" as all bodily injury and property damage resulting from continuous or repeated exposure to substantially the same conditions, and that the conditions here were "substantially the same," it must be concluded that the claims arose out of two accidents, even if we were to adopt National's construction of its policy language. National argues that the act giving rise to all the claims was Szczepkowicz' moving the tractor-trailer onto the highway in the fog. Appellees contend that each collision resulted from distinct negligent acts and that there was no continuous exposure to substantially the same conditions.

■■■ If the provisions in an insurance policy are expressed in plain and unambiguous terms, the language must be given its ordinary meaning without further construction. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4-5, 429 N.E.2d 1203.) A term may be considered unambiguous where it has acquired an established legal meaning. (*Schnackenberg*, 88 Ill. 2d at 5.) Despite numerous decisions in other jurisdictions, Illinois law was unclear until recently regarding the interpretation of "occurrence" or "accident"[1] in liability policies for determining whether one or multiple accidents existed. A majority of foreign courts have concluded that the number of occurrences is determined by referring to the cause or

---

[1]Past cases have used the words "accident" and "occurrence" interchangeably. (See *Hartford Accident & Indemnity Co. v. Wesolowski* (1973), 33 N.Y.2d 169, 172-73, 305 N.E.2d 907, 910, 350 N.Y.S.2d 895, 898-99; *Olsen v. Moore* (1972), 56 Wis. 2d 340, 351, 202 N.W.2d 236, 241.) No distinction is drawn between these terms in this opinion.

causes of the damage (the "cause" theory), as opposed to the number of individual claims or injuries (the "effect" theory). (See *Michigan Chemical Corp. v. American Home Assurance Co.* (6th Cir. 1984), 728 F.2d 374 (and cases cited therein).) First, in a 1984 case in which the Sixth Circuit construed Illinois law (*Michigan Chemical Corp.*, 728 F.2d 374), and then recently, in an appellate decision, Illinois has followed the majority of jurisdictions, which have concluded that the number of occurrences is determined by referring to the cause or causes of the damage rather than to the number of individual claims or injuries. (*Mason v. Home Insurance Co.* (1988), 177 Ill. App. 3d 454, 459-60, 532 N.E.2d 526.) In the case at bar, the circuit court correctly adopted the "cause" theory.

■ Courts applying the "cause" theory uniformly find a single accident "[i]f cause and result are so simultaneous or so closely linked in time and space as to be considered by the average person as one event." (*Welter v. Singer* (1985), 126 Wis. 2d 242, 251, 376 N.W.2d 84, 87.) The Illinois cases are of little assistance, however, in answering the question of whether one or two accidents occurred. Both *Michigan Chemical Corp.* (shipment of tainted livestock feed to several customers) and *Mason* (serving of contaminated food to several restaurant patrons) present distinguishable facts.

More factually similar are *Liberty Mutual Insurance Co. v. Rawls* (5th Cir. 1968), 404 F.2d 880, *Hartford Accident & Indemnity Co. v. Wesolowski* (1973), 33 N.Y.2d 169, 305 N.E.2d 907, 350 N.Y.S.2d 895, and *Olsen v. Moore* (1972), 56 Wis. 2d 340, 202 N.W.2d 236. In *Rawls*, a northbound driver struck the rear section of another northbound automobile, knocking it off the highway; he continued forward, veered across the centerline, and collided head-on with a southbound auto. Finding two accidents, the court took cognizance of the separation of time and distance and that two distinct collisions occurred rather than a single, sudden encounter. The court mainly focused, however, on the aspect of the driver's control before the second collision; his control of the vehicle after the initial contact with the first car was found persuasive. (*Rawls*, 404 F.2d at 880.) In contrast, in *Wesolowski*, a southbound driver sideswiped a northbound vehicle, and immediately continued on into a head-on collision with a second northbound auto. Relying on the fact that the two collisions occurred "but an instant apart," the court found an unbroken "continuum" between the two impacts, and concluded that there was a single occurrence. (*Wesolowski*, 33 N.Y.2d at 173-74, 305 N.E.2d at 910, 350 N.Y.S.2d at 899-900.) Also, in *Olsen*, an eastbound automobile crossed a median strip, hit an oncoming vehicle driving in the right westbound lane, and then

"almost instantaneously" glanced into another car in the left west-bound lane. Finding a single, uninterrupted cause, the court held only one accident occurred. (*Olsen*, 56 Wis. 2d at 350, 202 N.W.2d at 241.) The *Olsen* court distinguished *Rawls* on two grounds; unlike that case, both collisions occurred simultaneously and the driver never regained control of his vehicle after the initial impact. 56 Wis. 2d at 349-50, 202 N.W.2d at 240-41.

 Under the circumstances presented in the instant case, it cannot be said that the two collisions resulted from the same negligent act. Two separate, distinct collisions occurred five minutes apart. This is not a situation where, after the initial impact, one vehicle immediately "ricochets" off the other and within seconds collides with a third. Unlike *Olsen* and *Wesolowski*, there was no single force, nor an unbroken or uninterrupted continuum that, once set in motion, caused multiple injuries. (See *American Indemnity Co. v. McQuaig* (Fla. App. 1983), 435 So. 2d 414, 415.) Further, as in *Rawls*, Szczepkowicz never lost control of his vehicle after being struck by Davis.

More importantly, the conditions resulting in each collision were not "substantially the same." Davis struck the admittedly negligently driven tractor-trailer as it blocked both northbound lanes. Immediately after the impact, Szczepkowicz drove forward about 12 feet. This movement resulted in a change of navigability in the northbound lanes by opening, approximately, one full lane of traffic which previously had been blocked by the trailer at the time of the first collision. Five minutes elapsed[2] before the Banek car crashed into the trailer. Szczepkowicz should have had knowledge, especially after the Davis accident, of the danger imposed by his obstruction of the northbound lanes in the fog. His failure to remove his vehicle completely, which was still operable, from the northbound lanes after the first accident created a different set of conditions and constituted a separate cause of the second collision.

For purposes of the policy, the appellees' claims must be held to arise out of two accidents; the second collision did not result from

---

[2]National argues that the time span between collisions is not a factor this court can consider. This contention is without merit. Certainly one occurrence can result in injuries suffered over a period of time; in such a case, time would be irrelevant to a determination of the number of occurrences. (See *Michigan Chemical Corp.*, 728 F.2d at 380.) The relevance of time between injuries is relevant, however, under other factual scenarios. (See *Wesolowski*, 33 N.Y.2d at 174, 305 N.E.2d at 910-11, 350 N.Y.S.2d at 899-900.) In the instant case, the issue involves the reasonableness of a driver's actions and his failure to take corrective measures after an accident; the time span between collisions is one factor that must be taken into account.

continuous or repeated exposure either to the same or to substantially the same conditions. Summary judgment against National in its action for a declaratory judgment was proper and, accordingly, the judgment of the circuit court granting summary judgment for appellees must be affirmed.

Affirmed.

BILANDIC, P.J., and DiVITO, J., concur.