## A98A1552. HARRISON et al. v. JENKINS.
### (510 SE2d 345)

BEASLEY, Judge.

Mr. and Mrs. Harrison challenge the grant of a directed verdict against them on their claims against Jenkins arising out of an automobile accident. They also contend the court erroneously excluded certain evidence.

Three vehicles were traveling south on Highway 17 in Glynn County on a straight section of the road. Jenkins was in the first car, the Harrisons were following in their pickup truck, and Debbie Shaw was behind in her car. The Harrisons saw Jenkins slow down, as though looking for an address, but she came to a complete stop. She displayed no brake lights, emergency lights, or turn signal. The Harrisons stopped approximately one car length behind Jenkins and were at a complete stop with their brake lights on when they were struck from behind by Shaw. The collision forced the Harrison truck into Jenkins' car.

At trial, Mrs. Harrison admitted she did not have any problem bringing her truck to a stop without sudden movement and that Shaw was "speeding, tailgating, and all." Shaw, who was uninsured,

admitted she had been following too closely and that she entered into a consent judgment with the Harrisons in which she agreed she was at fault. She stated she could see that Jenkins' car had no lights on but said she only saw that "at the time of the impact."

At trial, after presentation of plaintiffs' case, Jenkins was granted a directed verdict on the ground that her negligence, if any, was not the proximate cause of the collision or Mrs. Harrison's injuries.

1. A motion for directed verdict shall be granted "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a). A jury following the law could not find otherwise. In making this determination, the court must construe the evidence in favor of the party opposing the motion.[1]

"It is basic in our law that no liability attaches unless the negligence alleged is the proximate cause of the injury sustained."[2] "Issues of proximate causation generally are reserved for the jury and are not appropriate for summary adjudication."[3] But there is a limit. "Although what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases."[4]

The general rule applied to this issue was set forth by the Supreme Court in *Southern R. Co. v. Webb*[5] as follows: "While the general rule is that if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act."[6]

The Court went on to explain, " '[a] natural consequence is one which has followed from the original act complained of, in the usual,

---

[1] *Hitchcock v. McPhail*, 221 Ga. App. 299, 300 (471 SE2d 256) (1996); *Lolmaugh v. T.O.C. Retail*, 210 Ga. App. 605, 606 (1) (436 SE2d 708) (1993); *Hogan v. Pony Express Courier Corp.*, 195 Ga. App. 592 (1) (394 SE2d 391) (1990).

[2] (Punctuation omitted.) *Dietz v. Becker*, 209 Ga. App. 678, 679 (2) (434 SE2d 103) (1993). See OCGA §§ 51-12-3; 51-12-8; 51-12-9.

[3] *Hambrick v. Makuch*, 228 Ga. App. 1, 2 (2) (491 SE2d 71) (1997).

[4] *McAuley v. Wills*, 251 Ga. 3, 7 (5) (303 SE2d 258) (1983).

[5] 116 Ga. 152, hn. 1 (42 SE 395) (1902).

[6] Id.

ordinary, and experienced course of events[, a] result, therefore, which might reasonably have been anticipated or expected. Natural consequences, however, do not necessarily include all such as[,] upon a calculation of chances[,] would be found possible of occurrence, or such as extreme prudence might anticipate, but only those which ensue from the original act without any such extraordinary coincidence or conjunction of circumstances as that the usual course of nature should seem to have been departed from.' "[7]

*Perry v. Lyons*[8] addressed application of this rule to a series of vehicular accidents that provides guidance here. The case involved a 14-vehicle pileup on a fog-enshrouded toll bridge over the Brunswick River.[9] It occurred in three waves. The first six cars were involved in various rear-end collisions which resulted in a blockade of the road. The seven vehicles in the next group were able to stop without colliding with anyone, but they were unable to proceed. Finally, a tractor-trailer collided with the second set of cars, causing several injuries and deaths.[10] One issue raised in resulting lawsuits was whether the injured drivers of the second group could recover damages from the negligent drivers in the first group in addition to the tractor-trailer driver.[11]

The court reasoned: " 'The original act of negligence may be passive, that is harmless unless something further occurs but capable of being made dangerous by the operations of some new force. . . . Under such conditions, the fact that an intervening act of a third person is itself negligent, and acts upon the original passive negligence so that injury occurs which otherwise would not have occurred, does not necessarily operate to make the second act of negligence by the third party the sole proximate cause of injury and thus insulate the original wrongdoer from liability where the original wrongdoer at the time of his negligent conduct should have realized that a third person might so act, or, as a reasonable person knowing the situation existing when the act of the third person was done, would not regard it as extraordinary that the third person would so act.' "[12]

The court in *Perry* correctly held that, including the favorable inferences afforded on summary judgment, the issue of whether the negligent drivers from the first group could be liable to the second

---

[7] Id. at 155 (1).

[8] 124 Ga. App. 211 (183 SE2d 467) (1971).

[9] The Harrison accident occurred on the same highway in the same county as the accident in *Perry v. Lyons*.

[10] Id. at 214.

[11] Id.

[12] (Citation omitted.) Id. at 215-216 (1) (b). See *Williams v. Grier*, 196 Ga. 327, 336 (2) (26 SE2d 698) (1943).

group required factfinding by a jury.[13] A jury could find that, on a busy highway, under conditions of dense fog and nearly zero visibility, those drivers should have reasonably foreseen that a blockage caused by their negligence would create an extremely hazardous condition on the bridge and could result in subsequent collisions.

Jenkins relies on *Herring v. Condit*[14] and *Tucker v. Star Laundry &c.*[15] for the conclusion that in this case there is no "essential causal link" between Jenkins' alleged negligence and Mrs. Harrison's injuries because the hazard allegedly caused by Jenkins was "complete and static" with no resultant injuries before the collision occurred. In *Tucker*, Mrs. Tucker, like Mrs. Harrison, was able to come to a full stop with proper signals when the vehicle in front of her stopped without signaling.[16] A third driver was "driving so fast and in such a reckless manner" that he collided with Tucker. The court found that, as a matter of law, the driver of the vehicle in front of Tucker who "stopp[ed] his truck suddenly and without warning was not a concurring proximate cause" of the accident because Tucker was able to stop after that driver's negligence was "complete and static."[17]

Jenkins' reliance on the "complete and static" language in *Tucker* is misplaced. First, *Perry* effectively disapproved *Tucker* and two other cases, noting that they "do appear to be, in some degree and to some extent, at variance with the rule expounded in the many others, but they have been distinguished, explained or not followed to such an extent that we see little purpose to be served in repeating the procedure here."[18] Whether one driver's negligent blocking of the road is superseded by a subsequent driver's negligence once the initial condition becomes "static and complete," is not supported by other case law.[19] It is a question of fact in most cases, not an automatic shield just because the first person's negligent act has ended. What the act produces may create a danger to innocent others.

Using the term "complete and static" to describe the first act of negligence in order to break the causal chain would logically elimi-

---

[13] *Perry*, supra, 124 Ga. App. at 219 (1) (b).

[14] 218 Ga. App. 855 (463 SE2d 532) (1995).

[15] 100 Ga. App. 175 (110 SE2d 416) (1959).

[16] Id. at 176.

[17] Id. at 177.

[18] *Perry*, supra, 124 Ga. App. at 218.

[19] See, e.g., *Washington v. Kemp*, 97 Ga. App. 235, 236-241 (102 SE2d 910) (1958) (regardless of whether one, two, or five cars have stopped as a result of the first driver's negligence, a following driver's negligence "a few minutes" later in colliding with the stopped cars did not supersede the first driver's negligence as a matter of law); *Atlanta &c. Cab Co. v. Atlanta Taxicabs*, 104 Ga. App. 89, 92-93 (6) (121 SE2d 175) (1961) (error to charge that plaintiff could not recover from first driver who negligently stopped if any of the other drivers, by the exercise of ordinary care, could have avoided the consequences of first driver's negligence).

nate the possibility that other conditions such as fog, rain, a steep grade, or a known slippery road might mean that the original actor should be liable where he negligently blocks the road under those conditions, even though his own negligence is complete and static. Or, as in this case, the original negligence may have been complete and static for such a short time that a following driver would have a difficult time reacting, especially if that following driver was going too fast, an unfortunate but very common occurrence on our roads. It is at best unclear whether the driver ahead of Mrs. Tucker in *Tucker* should have foreseen that a speeding driver close behind might ram into Mrs. Tucker if he were to negligently block the road. *Tucker* appears to have overlooked the foreseeability requirement.

*Herring* is distinguishable on the facts, and it was unnecessary for the court to rely on the "complete and static" language from *Tucker*. The plaintiff stopped behind a car which had stopped in an unobstructed lane on a highway behind a multi-car pileup which did not block all lanes of traffic.[20] Two or three minutes later, a third car rammed the plaintiff's car from behind. The court held that the plaintiff's injuries were caused by the following driver, not the drivers involved in the pileup, and affirmed summary judgment in their favor[21] on the theory that the following driver's negligence superseded any negligence of the first driver. This result was correct because a following car ramming into the back of another car which stopped in an unobstructed lane on a highway is not a probable or natural consequence of the original negligence which could have reasonably been foreseen. The fact that the original negligence was static and complete was irrelevant.

In this case, there is evidence that Jenkins was negligent per se, in that OCGA § 40-6-184 (a) (1) provides: "No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation." And OCGA § 40-6-123 (c) requires: "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in this Code section to the driver of any vehicle immediately to the rear when there is an opportunity to give such signal."[22] These rules are designed to benefit following drivers. Jenkins came to a complete or almost complete stop allegedly without any signal at a time and place where

---

[20] *Herring*, supra, 218 Ga. App. at 855.

[21] Id. at 856.

[22] See *Central Anesthesia Assoc., P.C. v. Worthy*, 173 Ga. App. 150, 152-153 (325 SE2d 819) (1984) (violation of statute may amount to negligence per se); *Cox v. Cantrell*, 181 Ga. App. 722, 724 (5) (353 SE2d 582) (1987) (violation of rules of road prima facie establishes negligence per se in absence of valid defense).

traffic was "bad." It is foreseeable that following drivers could become involved in an accident because of the unexpected need to stop and because the following drivers may be driving negligently. A jury could find that Jenkins was partially at fault. Accordingly, we reverse the directed verdict in favor of Jenkins.

*Tucker v. Star Laundry &c.* and *Herring v. Condit* are disapproved because they depart from the law to the extent they are based on the conclusion that the chain of causation is broken solely because the initial negligence is "complete and static." We need not discuss *Smith v. Commercial Transp.*[23] because there was evidence that Jenkins was negligent per se and a jury could find that she was partially at fault in the accident.

2. Anticipating retrial, we turn to the Harrisons' second enumeration, that the court erred in excluding an exhibit and Mrs. Harrison's corresponding testimony that her doctor told her not to return to work.

With regard to Mrs. Harrison's testimony, the court sustained Jenkins' objection when Mrs. Harrison's attorney asked her if any of her healthcare providers instructed her not to work after her injuries. The issue is whether the testimony was admissible under OCGA § 24-3-2. It turns on whether it was offered for the truth of the matter asserted or to show the fact the statement was made.[24] Mrs. Harrison argues that under OCGA § 24-3-2 the testimony should be admissible "to explain conduct and ascertain motives," so it should be admitted "not as hearsay but as original evidence." This is correct because the testimony was offered to explain why she did not return to work.[25] This was relevant to whether her lost income was attributable to her injuries.

As for the exhibit, the same rule applies to documents as well as testimony.[26] However, generally the admission of evidence rests on the sound discretion of the court.[27] The documents in question contain irrelevant hearsay in addition to the relevant information probative of the question. The court did not abuse its discretion in refusing admission of the exhibit.

*Judgment reversed. McMurray, P. J., Pope, P. J., Johnson, P. J.,*

---

[23] 220 Ga. App. 866 (470 SE2d 446) (1996).

[24] *Ross v. State*, 179 Ga. App. 283 (346 SE2d 87) (1986); *Jackson v. State*, 256 Ga. 536 (350 SE2d 428) (1986).

[25] See *Lloyd v. Tyson*, 195 Ga. App. 48 (392 SE2d 551) (1990) (plaintiff's testimony of doctor's statement was relevant to why plaintiff ceased to seek treatment for his injuries). Cf. *Highsmith v. Fillingim*, 171 Ga. App. 548, 549 (320 SE2d 391) (1984) (explanation of why plaintiff did not go to hospital would have been admissible under OCGA § 24-3-2 if it had not been double hearsay).

[26] See, e.g., *City of Brunswick v. Atlanta Journal &c.*, 214 Ga. App. 150, 152 (2) (447 SE2d 41) (1994).

[27] *Truck Parts & Svc. v. Rutledge*, 211 Ga. App. 166, 168 (438 SE2d 404) (1993).

*Smith, Ruffin, Eldridge, JJ., and Senior Appellate Judge Harold R. Banke concur. Andrews, C. J., concurs in judgment only. Blackburn, J., not participating.*

DECIDED DECEMBER 4, 1998.

*Vincent D. Sowerby*, for appellants.
*Whelchel, Brown, Readdick & Bumgartner, John E. Bumgartner, Gregory T. Carter*, for appellee.