## A07A0722. ALEA LONDON LIMITED v. LEE et al.
(649 SE2d 542)

ADAMS, Judge.

This declaratory judgment action arises from an underlying negligence action filed by Darrel and Kay Beaver against Dwayne Lee, d/b/a Lee Construction, for injuries Darrel Beaver sustained when he briefly assisted Lee in building a deck on the back of the

---

[31] See id.
[32] See id. at 789.
[33] See id. at 792 (2); *Barnes v. Turner*, 265 Ga. App. 6 (593 SE2d 9) (2003).
[34] See 278 Ga. at 791 (1).

Beavers' home. Alea London Limited, Lee's commercial general liability (CGL) insurance carrier, provided Lee a defense in the underlying litigation subject to a reservation of rights. Alea sought a declaration that it does not owe a duty to defend or indemnify Lee under the insurance policy's voluntary labor exclusion. The parties filed cross-motions for summary judgment. The trial court denied Alea's motion for summary judgment, and instead found that coverage existed and granted the motion for summary judgment filed by Lee and the Beavers. Alea appeals.

From July 2000 through April 2003, Lee maintained a CGL policy with the Hartford Insurance Company, which he acquired through agent Stacy Davis at The Davis Agency, Inc. That policy contained no voluntary labor exclusion. Hartford cancelled that policy when Lee failed to pay the premium, and in June 2003 he again contacted Davis to replace that policy. Davis forwarded a "request for a quote" to Northeast Agencies, Inc., an insurance broker, for new CGL coverage for Lee. Northeast, in turn, contacted TAPCO Insurance Underwriters, Inc., which is the managing general agent for Alea. On July 7, 2003, Northeast forwarded a quote from Alea to Davis. The quote made no reference to a voluntary labor exclusion although it listed other applicable exclusions. In response, Lee signed an Alea insurance application, and on August 11, Davis forwarded it to Northeast along with Lee's initial annual premium payment.

Northeast subsequently sent Davis a binder securing CGL insurance coverage for Lee as of August 12, 2003. At this point, no written copy of Lee's policy had been generated, but coverage existed based upon the terms of the quote. TAPCO, on Alea's behalf, subsequently reviewed Lee's application and printed a hard copy of the CGL policy on August 25, 2003. The policy was then scanned into the TAPCO computer system on September 2, 2003. No clear indication exists in the file as to when the policy was sent to Northeast, Davis or Lee, although it was TAPCO's usual practice to mail the policy to the broker — in this case, Northeast — within two days of the policy being issued. The printed policy contained the following voluntary labor exclusion:

> This insurance does not apply to "bodily injury", "personal injury" or medical payments to any member, associate, affiliated member, or to any person or persons loaned to or volunteering services to you, whether or not paid by you, arising out of or in the course of work performed for you or on your behalf.

In the meantime, Beaver hired Lee to build a deck on the back of his home and agreed to pay Lee's requested rate of $35 per hour. Lee

estimated that the job would take about two days. Lee and an assistant began work on September 1, Labor Day, but Lee came without an assistant on the second day. Lee worked alone on the deck on September 2, until late in the afternoon when he asked Beaver, who was working in his yard, to hold one end of an eight-foot board so that Lee could nail it to the house. Beaver initially demurred, saying that he needed to pick up his daughter, but Lee asked if he could help him "right quick." Beaver held the left side of the board while Lee held the right side at shoulder height and began nailing the board every 16 to 18 inches with a nail gun. After about one-half to one minute, Beaver told Lee that he had enough nails and Beaver had to go. Beaver let go of the board, turned to leave, ducking under a cross brace. As he was coming up from under the cross brace, Lee turned to the left with the nail gun in his hand, finger on the trigger, and shot a nail into Beaver's head.

In considering Alea's motion for summary judgment, the trial court concluded that Alea failed to prove that Beaver was acting as a "volunteer" at the time he was injured. The court found that the phrase "volunteering services" in the exclusionary clause was ambiguous and capable of more than one reasonable interpretation. Accordingly, the trial court applied the interpretation most favorable to the Beavers, finding that the term "volunteer" "is commonly a person who may share characteristics of an employee, but who gratuitously donates his labor to the employer." The court then concluded that Darrel Beaver was not a volunteer because he was performing the act for his own benefit, not for Lee's benefit. And even if Beaver had been acting in Lee's behalf, the trial court found that he had stopped his "volunteering" when he had dropped the board and was turning to leave when he was injured.

The trial court also found that Lee was entitled to enforce the terms of the policy as spelled out in the binder, because he had no notice of the voluntary labor exclusion contained in the policy at the time of the accident. Accordingly, the trial court found that Alea was estopped from relying upon the voluntary labor exclusion and granted summary judgment to the opposing parties. Alea takes issue with each of the trial court's conclusions.

1. Alea asserts that the trial court failed to properly apply the rules of contract construction in finding that the voluntary labor exclusion was ambiguous. The company also asserts that the trial court erred in applying a specialized definition from the "master-servant" context. Lee and the Beavers counter that the language of the exclusion is ambiguous and the trial court properly applied the more favorable definition. They assert that the definition the trial court relied upon came, inter alia, from Black's Law Dictionary and that Alea itself had relied upon Black's in its letter denying coverage

to Lee. Thus, they assert that Alea admitted the definition used by adopting Black's as a source of reference.

"In Georgia, the insurer bears the burden of showing that a fact situation falls within an exclusionary clause of an insurance policy. And when construction of a policy is required, exclusions must be construed against the insurer and in favor of the insured." (Citations omitted.) *Connell v. Guarantee Trust Life Ins. Co.*, 246 Ga. App. 467, 470 (1) (541 SE2d 403) (2000). See also *Southern Trust Ins. Co. v. Dr. T's Nature Products Co.*, 261 Ga. App. 806, 807 (1) (584 SE2d 34) (2003) (" 'The risk of any lack of clarity or ambiguity in an insurance contract must be borne by the insurer.' "). Moreover, when a term or phrase used in an insurance policy is undefined, courts look to the commonly accepted meaning of the term:

> In determining the meaning of words used in the insurance policy, dictionaries supply the plain, ordinary, and popular sense. Here, there being no definition of the [phrase "volunteering services"] in the policy, [a] court [is] entitled to use the dictionary to determine the plain and generally accepted meaning of the term.

*Empire Fire & Marine Ins. Co. v. Daniels*, 279 Ga. App. 602, 605 (1) (631 SE2d 799) (2006). Thus, we turn to the dictionary in determining whether Beaver was acting as a volunteer within the terms of the policy.

Alea consults various dictionaries to assert that we should define the term in its most general sense as someone who acts with free will and with no pay. Lee urges that we adopt the definition relied upon by the trial court. We note that the current version of Merriam-Webster's dictionary defines a volunteer in pertinent part as "a person who voluntarily undertakes or expresses a willingness to undertake a service: as . . . one who renders a service or takes part in a transaction while having no legal concern or interest." Merriam-Webster's On-Line Dictionary, http://www.m-w.com/dictionary/volunteer. This definition coincides with the principal definition of the term "volunteer" found in the most recent version of Black's Law Dictionary: "[a] voluntary actor or agent in a transaction; esp., a person who, without an employer's assent and without any justification from legitimate personal interest, helps an employee in the performance of the employer's business." Black's Law Dictionary (8th ed. 2004).

Beaver's actions do not fall under any of these definitions of the term "volunteer." Beaver hired Lee to construct a deck on his home. Any actions Lee took to complete that project, therefore, were in Beaver's interest, as well as Lee's. Beaver cannot be said to have no "legal concern or interest" in Lee's work on his own deck, nor did he

briefly assist Lee "without any justification from legitimate personal interest." Even under Alea's proffered definition, it could be argued that Beaver, though acting with free will, did not act without pay in the general sense of that term. We agree with the trial court that by assisting Lee to install the board, Beaver received a benefit by helping Lee complete the task for which he had hired him. And that benefit could even be considered a financial one. Lee was being paid by the hour and Beaver's assistance necessarily shortened Lee's labors, a form of implied remuneration to Beaver, however slight. Accordingly, whether we find the language of the exclusion to be ambiguous and reject Alea's proffered definition, or merely apply the plain and common meaning of the term "volunteer" from the dictionaries we consulted, we find that Alea has failed to carry its burden of demonstrating that the exclusion applies in this case.

Further, we are not persuaded by Alea's citation to two unpublished decisions from other jurisdictions, which he argues hold that the term "volunteer" implies simply free will and no pay. *Northfield Ins. Co. v. Turri*, 2001 Minn. App. LEXIS 276 (2001); *Romano v. Northland Ins. Co.*, 175 Wis.2d 622 (502 NW2d 282) (1993). Those two decisions are factually distinguishable because they involve someone who was either hired (*Turri*) to do specific work and voluntarily engaged in other tasks or was assigned as a volunteer (*Romano*) to work a six-hour shift at an ethnic festival. Neither of these individuals was doing work to further his own legitimate personal interest, as Beaver was. Moreover, in contrast to Turri and Romano, Beaver was not hired *by* Lee for a term certain; to the contrary, he hired Lee. And he was not intending to assist Lee in completing a task for someone else's benefit, as Romano and Turri were. Rather, he pitched in for a brief moment, to further his own interest. Accordingly, we affirm the trial court's grant of summary judgment in this case.

2. Given our holding in Division 1 above, we need not reach Alea's remaining enumerations of error.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 6, 2007.

*Fields, Howell, Athans & McLaughlin, Alissa C. Malone*, for appellant.

*Stewart, Melvin & Frost, J. Douglas Stewart, Mark W. Alexander, Hulsey, Oliver & Mahar, Joseph D. Cooley III*, for appellees.