S09Q1846. STATE AUTO PROPERTY AND CASUALTY
COMPANY v. MATTY et al.

(690 SE2d 614)

NAHMIAS, Justice.

The United States District Court for the Middle District of Georgia has certified a question to this Court about how to determine the meaning of the term "accident" in an automobile liability insurance policy when the word is not expressly defined in the policy and, more specifically, how to determine if there has been one accident or two when an insured vehicle strikes one claimant and then very shortly thereafter strikes another. See *State Auto Property & Cas. Co. v. Matty*, 2009 U. S. Dist. LEXIS 61632 at *18 (M.D. Ga. July 20, 2009). Correctly concluding that there is no Georgia case law on point, the district court's order asks which of three general analytical approaches adopted by other jurisdictions for construing the term "accident" Georgia would adopt — the "cause" theory, the "effect" theory, or the "event" theory. Id. at *10-18. For the reasons that follow, we conclude the meaning of the term "accident," when not otherwise defined in setting limits of liability, should be determined using the cause theory. Application of that theory, in turn, will determine the number of accidents and the limits of liability in cases such as this one.

This case involves automobile liability insurance claims. A vehicle driven by State Auto's insured (Rachel Griffin) struck a bicyclist (Matthew Matty), killing him. Griffin's car then struck a second bicyclist (Jeffrey Davis), seriously injuring him. An accident reconstruction expert testified that, assuming the insured had traveled at a constant speed of 55 miles per hour (the speed limit)

from the point she struck the first bicyclist to the point where she struck the second one, it would have taken her "just over a second" to travel the 95 to 115 feet between the two bicyclists.

The insured's policy with State Auto contains a limit of liability for bodily injury of $100,000 for "each accident." The policy also provides, in part, that this limit of liability is the "maximum limit of liability for all damages resulting from any one auto accident. This is the most [State Auto] will pay regardless of the number of: 1. 'Insureds'; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the auto accident." The policy does not define "accident," "each accident," or "any one accident."

State Auto contends that the incident in which Griffin struck the bicyclists ("claimants") constitutes one accident and that it is therefore responsible for providing only a single $100,000 limit of coverage. The claimants, on the other hand, contend that there were two accidents and that State Auto is responsible for providing two $100,000 limits of coverage.

1. Before turning to the different theories employed around the country for construing the word "accident" when it is not defined in a liability insurance policy, we address a principal contention of the claimants. They argue that, applying the rule of contract construction that courts may look to statutory and dictionary definitions of a term not defined in a contract to supply the meaning of the term, "accident" must be construed to mean that two different impacts constitute two different accidents. They note that "accident" is defined in OCGA § 1-3-3 (2) to mean "an event which takes place without one's foresight or expectation or design." Because that statutory definition does not help, the claimants then look to dictionary definitions of one of the words used in the statute, noting that "event" is defined variously as "[a] phenomenon or occurrence located at a single point in space-time," The American Heritage Dictionary of the English Language (4th ed. 2006), and as "any incident, good or bad," Webster's Revised Unabridged Dictionary (2006). The claimants assert that, under either of these definitions, two impacts cannot be considered one "event" and therefore one "accident." Such interweaving of inconsistent definitions of words defined in dictionaries with words defined in statutes is a slender reed upon which to base a clear meaning of a contractual term. In any event, these definitions do not dispense with the rule that contracts must be construed as a whole, *Sherman & Hemstreet, Inc. v. Cincinnati Ins. Co.*, 277 Ga. 734, 737 (594 SE2d 648) (2004), or with the cardinal rule of construction, which is to ascertain the intent of the parties, OCGA § 13-2-3.

The policy at issue in this case, viewed as a whole, shows a clear intent to limit liability in accidents involving multiple vehicles. The

term "each accident" appears in the limitation of liability section of the policy, which provides that the limit of liability of $100,000 for "each accident" is "the most [State Auto] will pay regardless of the number of: 1. 'Insureds'; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the auto accident." Automobile accidents involving multiple vehicles and multiple injured parties (insureds and third parties) are an everyday occurrence on our roads. Recognizing this reality, this contractual language contemplates that there can be a single accident in which there are multiple vehicles, injured parties, and claims and provides that for that type of accident, there will be a liability limit of $100,000. See *Banner v. Raisin Valley, Inc.*, 31 FSupp.2d 591, 592 (N.D. Ohio 1998) (a limitation of liability "per accident" regardless of number of vehicles indicates "accident" is meant to encompass multiple vehicle collisions). Moreover, by placing the term "accident" in the limitation of liability section, "[m]anifestly, it was intended that the policy have monetary limits of coverage." *St. Paul Mercury Indem. Co. v. Rutland*, 225 F2d 689, 692 (5th Cir. 1955).

Defining accident as urged by the claimants — that is, by the number of impacts regardless of how close in time and place they occurred — would mean that there can never be one accident and a $100,000 limit of liability in a multiple vehicle collision, because it is virtually impossible for multiple vehicles to collide truly simultaneously (at a "single point in space-time," to use one of the dictionary definitions). See *Banner*, 31 FSupp.2d at 592. Under the claimant's construction, the policy's $100,000 limitation of liability "regardless of the number of . . . vehicles involved" would be meaningless in almost any collision involving multiple vehicles, as State Auto would have to pay $100,000 for each impact. That is plainly not the intent of the contract.

Accordingly, we reject the claimant's overly narrow construction of the word "accident" and turn to the district court's broader question — which theory for construing the term should be adopted in Georgia when "accident" is not specifically defined.

2. Of the three theories that have been adopted by courts around the country to aid in the construction of the word "accident," the clear majority rule is the "cause" theory. See, e.g., *Rutland*, 225 F2d 692-693; *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F2d 56, 61 (3d Cir. 1982); Gordon L. Ohlsson, The Law of Liability Insurance § 2.05[3][a] (Matthew Bender 2009). See generally *Banner*, 31 FSupp.2d at 593-594 (collecting cases). Under this theory, the number of accidents is determined by the number of causes of the injuries, with the court asking if " " "[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." " " *Appalachian*, 676 F2d at 61 (citations

omitted). In the context of vehicle accidents involving multiple collisions that do not occur simultaneously (recognizing that it is almost impossible that such collisions can occur without any difference in time and place), courts look to whether, after the cause of the initial collision, the driver regained control of the vehicle before a subsequent collision, so that it can be said there was a second intervening cause and therefore a second accident. *Banner*, 31 FSupp.2d at 593; *Illinois National Ins. Co. v. Szczepkowicz*, 542 NE2d 90, 92-93 (Ill. App. Ct. 1989).

The second approach, used by a minority of courts, is the "effect" theory. Under it, the number of accidents is determined from the point of view of the person who was injured, so that each individual injury constitutes a separate "accident." See, e.g., *Anchor Cas. Co. v. McCaleb*, 178 F2d 322, 324-325 (5th Cir. 1949); Ohlsson at 2.05[3][b]. This theory stems from an 1891 decision of an English court. Id. (citing *South Staffordshire Tramways Co. v. Sickness & Accident Assurance Assn.*, 1 Q.B. 402 (1891)).

The final theory, used by some courts, is known as the "event" theory. Under it, a court looks to the number of events that resulted in the injuries and liability in question. *Shamblin v. Nationwide Mutual Ins. Co.*, 332 SE2d 639, 644 (W.Va. 1985). If the injuries resulted from an event, "unbroken with no intervening agent or operative factor," there is but one accident under the policy. *Hartford Accident & Indem. Co. v. Wesolowski*, 33 NY2d 169, 174 (1973). Accord *Shamblin*, 332 SE2d at 644. Courts adopting the event theory have done so based on their conclusion that the basis for liability under an insurance policy is "an event (the collision) resulting in bodily injury or property damage." Id.[1]

In deciding which of these theories to adopt, it is instructive to consider them as applied to the facts of the *Rutland* case. In *Rutland*, a truck owned by Rutland collided with a freight train, "causing damage to sixteen cars, to the contents of those cars and to the roadbed of the railway company." 225 F2d at 690. The railway cars belonged to 14 separate owners, the contents belonged to numerous shippers, and the railway bed belonged to the railroad company. Id. at 691. The appeal raised "the proper interpretation of the phrase '5,000.00 each accident' as the stated limit of liability for automobile

---

[1] Although the application of the cause and event theories will lead to the same conclusion regarding the number of accidents in most automobile accident cases, this may not be the case in products liability cases. See Tung Yin, *Nailing Jello to a Wall: A Uniform Approach for Adjudicating Insurance Coverage Disputes in Products Liability Cases with Delayed Manifestation Injuries and Damages*, 83 Cal. L. Rev. 1243, 1249-1260 (1995). As this case involves the application of the theories in automobile liability cases, we express no opinion regarding the application of the theories in the context of products liability.

property damage." Id. Rutland contended that, under the effect theory, the insurer should pay $5,000 to each of the owners of the railway cars, to each of the owners of the contents thereof, and to the railroad company, id. — a total liability likely exceeding $100,000. The insurer contended, under the cause theory, that there had been but one accident and that its liability was limited to $5,000. Id. (There would also be one accident under the event theory, which was not addressed in *Rutland*.) The Fifth Circuit concluded that the word "accident" should be "construed from the point of view of the cause rather than the effect," id. at 692, and ruled that the "single, sudden and unintentional collision involved here was one accident, and the insured's liability for all property damage resulting therein is $5,000.00," id. at 693.

We adopt the "cause" theory for application in Georgia. "An influential majority of jurisdictions has adopted" the theory, and it "is consonant with the method of computation of [insurance] rates by sound rating organizations." Ohlsson at § 2.05[3]. In this regard, the *Rutland* court, in rejecting the effect theory, recognized that the word "accident" appeared in the limits-of-liability section of the policy and explained that

> [m]anifestly, it was intended that the policy have monetary limits of coverage; but consideration of the amount stated in relation to the claimants damaged rather than the event causing the damage would make the policy potentially limitless. Moreover, it is well known that the premium rates for liability insurance are based upon the risk insured and the potential amounts of liability covered. Such a system of computing rates is simply incompatible with the idea of virtually limitless liability depending solely upon the number of claimants.

*Rutland*, 225 F2d at 693.

Because the effect theory determines the number of accidents by the number of persons who sustained injuries (and the number of vehicles or other property that sustained damage), it has sometimes been called the "windfall" theory, has been said to violate "common sense," and "has not been applied to automobile liability cases, perhaps because automobile accidents are more easily understood than cases involving damage to realty." Ohlsson at 2.05[3][b]. Its rejection has therefore been encouraged. Id.

The cause theory corroborates the intent of the parties to the insurance contract in this case. As previously noted, the term "each accident" appears in the limitation of liability section of the State Auto policy, which clearly contemplates that there can be a single

"accident" in which there are multiple vehicles, injured parties, and claims and provides that for that type of single accident, there will be a liability limit of $100,000. By contrast, the effect theory, by defining accident in terms of the number of people injured and items of property damaged, would mean that there can never be one accident and a $100,000 limit of liability in a multiple vehicle collision in which several persons are injured or vehicles damaged, or even in cases where the insured's vehicle collides with only one other vehicle and there are several people in that one vehicle who are injured. As with the claimants' proposed definition of the word "accident," the effect theory would relegate the contract's liability limit to near surplusage, applying only to accidents involving one vehicle and one passenger, while subjecting the insurer to unpredictable and potentially enormous liability in numerous cases. See *Greaves v. State Farm Ins. Co.*, 984 FSupp. 12, 16 (D.D.C. 1997); *Rutland*, 225 F2d at 692. If the word "accident" were intended to apply to each person injured and item of property damaged in an accident, the policy would simply have read that the limit of liability was $100,000 "for each person injured or item of property damaged."

Finally, the cause theory is more consistent with Georgia tort law than the effect and event theories, recognizing that liability insurance is designed to cover damages for the torts of the insured. Under our tort law, it is well settled that "no liability attaches unless the negligence alleged is the proximate cause of the injury sustained." *Harrison v. Jenkins*, 235 Ga. App. 665 (510 SE2d 345) (1998). Defining the number of separate "accidents" in terms of the number of separate "causes" is consistent with this rule. Several of the seminal cases that adopted the cause theory for construing the term "accident" employ this reasoning:

> The insured and the insurer intended by this contract to indemnify the insured's tort liability to third persons. Such liability arises from a negligent act on the part of the insured which is the proximate cause of an injury. The absence of proximate cause precludes tort liability. Proximate cause is an integral part of any interpretation of the words "accident" or "occurrence," as used in a contract for liability insurance which indemnifies the insured for his tortious acts.

*Truck Ins. Exchange v. Rohde*, 303 P2d 659, 663 (Wash. 1956). See also Ohlsson at § 2.05[3][a] (citing *Hyer v. Inter-Insurance Exchange of the Automobile Club of Southern California*, 246 P. 1055, 1057 (1926)).

For the foregoing reasons, we adopt the cause theory for use in

liability insurance cases in Georgia. We further hold that it applies to the insurance contract at issue in this case, being consistent with that contract read as a whole and in the absence of a specific, contrary definition of "accident."[2]

3. Having clarified the legal issue about which the district court found Georgia law uncertain, we do not undertake to determine whether, applying the cause theory to the facts as developed in the district court, " " "[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." " " *Appalachian*, 676 F2d at 61 (citations omitted). We leave it to the district court to answer that question and to resolve the case.

*Certified question answered. All the Justices concur, except Hunstein, C. J., Carley, P. J., and Benham, J., who dissent.*

BENHAM, Justice, dissenting

I respectfully dissent from the majority's opinion because it disregards a long line of precedent in this state that an insurance policy is a contract and, if there is any ambiguity to be found therein, the ambiguity must be construed against the insurer. *State Farm Mut. Ins. Co. v. Staton*, 286 Ga. 23 (685 SE2d 263) (2009); *Richards v. Hanover Ins. Co.*, 250 Ga. 613 (1) (299 SE2d 561) (1983); *Mason v. Allstate Ins. Co.*, 298 Ga. App. 308 (1) (a) (680 SE2d 168) (2009); *Perry v. State Farm Fire & Cas. Co.*, 297 Ga. App. 9 (1) (676 SE2d 376) (2008) ("if . . . a provision is susceptible to more than one interpretation, we construe such provision against the insurer"). Adherence to this precedent eviscerates the need to adopt a hard and fast analytical approach from other jurisdictions, as requested by the district court, when certain terms in an insurance policy are undefined. "The burden is on the insurer to make its intent clear and unmistakable and to explicitly show any exceptions to coverage." *Cincinnati Ins. Co. v. Page*, 188 Ga. App. 876 (374 SE2d 768) (1988). "[T]he risk of any lack of clarity or ambiguity in an insurance contract must be borne by the insurer." *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 337 (380 SE2d 686) (1989).

Here, it is unnecessary to adopt any of the theories requested by

---

[2] The dissent suggests that we need only apply the rules of contract construction to resolve this case. We have done just that. In Division 1 we apply some basic rules of contract interpretation to the insurance contract at issue. The theories discussed in Division 2 are simply another rule used in the specific context of interpreting the word "accident" in insurance contracts. In this case, the cause theory fully supports the conclusion reached by applying the basic rules; if it left or created an ambiguity in the contract language at issue, the additional interpretive rule discussed by the dissent would be relevant, but it does not. Moreover, deciding which theory is the rule in Georgia – how this tool of insurance contract construction works in this State – will aid parties in drafting their insurance contracts to best reflect their intent and aid trial courts asked to interpret insurance contracts in the future.

the district court because the matter may be resolved by the rules of contract construction. Although Georgia law regarding contract construction is cited by the district court, it is not clear that any rules of contract construction have been applied to the policy at issue. For example, in its order, the district court states that the terms "accident," "each accident," "any one accident," and "the auto accident" are undefined by the insurance policy and seems to imply that an ambiguity exists due to the policy's failure to define these terms; however, the district court does not set forth any analysis. Under Georgia law, undefined terms in an insurance policy are to be given their plain, ordinary meaning. *Claussen*, supra, 259 Ga. at 334-335;[3] *Alea London Ltd. v. Lee*, 286 Ga. App. 390 (649 SE2d 542) (2007). If, after giving the terms their plain, ordinary meaning, there is still some ambiguity in the policy, or the language at hand is susceptible to more than one reasonable interpretation, then the language is to be construed most strongly against the entity that drafted the policy and in favor of the insured. *Claussen*, supra, 259 Ga. at 334-336 (if a word in an insurance policy is capable of more than one meaning, then the meaning favoring the insured must be applied). Neither the district court's order nor the majority's opinion explain why the rules of contract construction are insufficient to resolve the case at hand.

Accordingly, I believe more analysis is warranted on the part of the district court and I would thus respond to the certified question in the negative.

I am authorized to state that Chief Justice Hunstein and Presiding Justice Carley join in this dissent.

DECIDED MARCH 1, 2010.

*Savell & Williams, Jeffrey A. Van Duyne, William E. Turnipseed,* for appellant.

*Daughtery, Crawford, Fuller & Brown, Peter J. Daughtery, Dustin T. Brown, Cash, Krugler & Fredericks, Andrew B. Cash, Susanne W. Langlais, Berry, Shelnut, Day & Hoffman, Peter B. Hoffman,* for appellees.

---

[3] Using definitions contained in dictionaries is an acceptable method by which to ascertain the everyday meaning of words contained in insurance policies. *Claussen*, supra, 259 Ga. at 335.