DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FLANIA BELT,**
Appellant,

v.

**USAA CASUALTY INSURANCE COMPANY**
Appellee.

No. 4D20-339

[March 10, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James Nutt, Judge; L.T. Case No. 50-2016-CA-010153-XXXX-MB.

William T. Viergever of Lytal Reiter Smith Ivey & Fronrath, West Palm Beach, for appellant.

Charles M-P George of the Law Offices of Charles M-P George, Coral Gables, and Christopher W. Wadsworth and Daniel L. Margrey of Wadsworth, Margrey & Dixon, Miami, for appellee.

WARNER, J.

In this appeal from a final judgment for defendant in a multiple impact automobile incident, appellant contends that the trial court erred in instructing the jury regarding whether the incident amounted to one accident or two, a finding required to determine the extent of uninsured motorist benefits. We conclude that the trial court did not err in giving an instruction that multiple impacts can constitute one accident if there is one proximate, continuing cause of injury. In a second issue, appellant argues that the court erred in permitting a defense expert to offer opinions that it claims were surprise testimony. We affirm this issue without further analysis because the testimony was consistent with his pre-trial report and, in any event, was cumulative.

**Facts**

While travelling on I-95 appellant was struck by a pickup truck, a hit and run "phantom" vehicle traveling next to her, and then struck by

another vehicle driven by an uninsured motorist.  She alleged that these were two separate accidents and sought to recover against USAA, her insurer, under her uninsured motorist insurance coverage for damages caused by both the hit and run driver and by the uninsured driver.

USAA contended that this was one incident, subject to the limits for one accident, not two.  The uninsured motorist portion of the policy insured against both uninsured motorists and "hit and run" vehicles.  A "hit and run" vehicle is one which cannot be identified but either hits or causes an accident involving bodily injury.  The policy provisions at issue stated:

> For BI sustained by any one person in any one accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage, multiplied by the number of premiums shown in the Declarations for UM Coverage.  Subject to this limit for "each person," **our maximum limit of liability** for all damages for BI resulting from any one accident is the limit of liability **shown on the Declarations for "each accident" for UM Coverage** multiplied by the number of premiums shown on the **Declarations for UM Coverage.**

(Emphasis supplied).  The limits "are the most we will pay, regardless of the number of . . . [v]ehicles involved in the accident."

Appellant filed suit against USAA and the uninsured driver alleging she was injured in two accidents, one with the hit and run driver and one with the uninsured driver.  The parties settled the count against the hit and run driver with USAA paying its policy limits.  The uninsured motorist was later dismissed from appellant's complaint, and USAA defended the action, contending that the incident was one accident, not two, being one continuous sequence of events.  In addition, USAA alleged that the uninsured motorist was not at fault.  Appellant conceded that, if the uninsured motorist was not at fault, then there was no coverage.  However, she disputed that the incident was only one accident.

At trial, two different versions of the incident were presented.  Appellant testified that she was driving north in lane four of five lanes on I-95, side by side with a pickup who was to her left in the fifth lane (an HOV lane).  The pickup veered to the right and struck her car.  She spun out of control.  The pickup never stopped.  Her car came to a complete stop in lane three

of the five lanes. Several cars went by her in lane four, while she was stopped for approximately a minute. She was facing northwest and trying to make her way over to the left-hand side to the emergency lane past the HOV lane when she was struck again in lane four by the uninsured motorist, and it sent her spinning again. She maintains that she was in control of her car when the second vehicle hit her.

In contrast, the uninsured motorist testified that he was traveling north on I-95 one to one-and-a-half car lengths behind appellant's car. He had been following her for two to three minutes. There was a white pickup truck on appellant's left in lane five, traveling almost parallel to her. The pickup made an abrupt move to the right, and appellant swung hard to the right, spinning. The uninsured motorist hit his brakes. Appellant then started swerving from the right to the left, and at that point the uninsured motorist hit her. The left corner of the uninsured motorist's front bumper struck appellant's driver's-side rear tire. He testified that at the time he collided with appellant she was headed southwest and had she been traveling in any other direction, the point of impact would have been different, and the front of his car would have been wrecked. He testified that all of this happened in the span of only a few seconds, in one continuous sequence of events.

An accident reconstruction expert presented by USAA testified that appellant's impact with the uninsured motorist's car caused damage to the rear tire of appellant's car, thus confirming that appellant was traveling in a southwesterly direction at the time of impact with appellant's vehicle. The expert testified that if appellant had been traveling northwesterly the uninsured motorist would have impacted the rear of her car. The expert opined that it was impossible for appellant to spin and come to rest facing northwest in lane three in the manner she described. The expert told the jury that the uninsured motorist's testimony that appellant swerved right, back to the left and then crossed in front of him, was possible and the result of driver oversteering. He opined that three to five seconds elapsed between the time appellant swerved away from the white pickup and the time she impacted with the uninsured motorist. In answer to a juror's question, the expert testified that he considered the incident one accident, not two.

He further testified that if appellant had been sitting in her vehicle in lane three for a minute, the uninsured motorist would have been at least a mile away and would not have been able to see the impact between the pickup and appellant's vehicle. While appellant objected to this testimony as new opinions on "line of sight" outside his report, the court overruled the objection. The expert was testifying, not on matters involving expert

3

testimony, but based upon his knowledge of the area from the time he patrolled as a state trooper, as well as his familiarity with an overpass in the area. Moreover, in his pre-trial report the expert also stated that the uninsured motorist would not have been able to see the event because he would have been over a mile away. Thus, his testimony was consistent with the pre-trial report and not new.

At the charge conference, appellant offered an instruction on subsequent injuries in which the jury would be first instructed on a modification of Florida Standard Jury Instruction 501.5(b), asking that the jury try to separate the damages to her caused by the pickup and by the uninsured motorist but, if it could not, then it must award all the damages against the uninsured motorist (USAA). Then, the jury would be asked to determine whether the incident was one act or two. USAA objected, because the threshold question was whether this was one accident or two and asked for a special verdict. The court eventually gave the following instruction to the jury:

> The first issue you are asked to answer is whether or not the two impacts amounted to one or two accidents. Multiple impacts will be considered one accident if there is but one proximate, uninterrupted, and continuing cause of injury.
>
> In answering that question, you must consider the following factors: The time between each impact, the space or distance between each impact and whether plaintiff regained control of her vehicle before the second impact.
>
> If you find that both impacts amounted to one accident, you will be done and need not decide any other issue.
>
> If you find that both impacts amounted to two accidents, you will have to decide whether [the uninsured motorist] was negligent in the operation of his motor vehicle, and if so, whether that negligence was a contributing legal cause to plaintiff's injuries.

The first question on the verdict form asked:

> 1. Was the impact between [appellant] and [the uninsured motorist] a separate distinct second accident?

The jury returned a verdict finding that the impact between appellant and the uninsured motorist was not a separate distinct second accident,

4

answering "no" to the question. Judgment was entered on the verdict. This appeal follows.

## Analysis

A decision to give or withhold a jury instruction is reviewed for an abuse of discretion. *McConnell v. Union Carbide Corp.*, 937 So. 2d 148, 152 (Fla. 4th DCA 2006), disapproved on other grounds by *Aubin v. Union Carbide Corp.*, 177 So. 3d 489 (Fla. 2015).

Appellant argues on appeal that the trial court erroneously instructed the jury by framing the instruction on whether the two impacts amounted to one or two accidents. Instead, she contends the court should have instructed the jury on her requested jury instruction, which asked the jury "was the second driver [uninsured motorist] negligent in causing the second impact, and if so, was that negligence a cause of injuries to the insured." However, the overriding issue to be decided was whether the incident was one accident or two for purposes of determining insurance coverage. Therefore, the court did not err in instructing the jury as it did.

The policy provides coverage for injuries sustained by the insured when involved in an accident with an uninsured motorist vehicle or a "hit and run" vehicle. But the maximum liability for one accident is the limit for "each accident." Although the policy does not define accident, it limits its liability further by stating that the maximum limit for one accident is the most it will pay, regardless of the number of vehicles involved in the accident. Thus, the policy makes clear that an accident can involve multiple vehicles.

The definition of "accident" in an insurance policy, where a definition is not provided, has been subject to multiple interpretations. *See State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). Most of these cases involve its determination in a comprehensive general liability policy as to whether an insured is liable for an incident. *See id.*

In *Koikos v. Travelers Insurance Co.*, 849 So. 2d 263 (Fla. 2003), the court considered an occurrence-based policy which defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 266. The insured was sued for the negligent failure to provide security at a party where two individuals were shot. *Id.* at 265. To determine whether this constituted one occurrence or two, the court applied the "cause theory" for determining the number of occurrences, which is used by a majority of jurisdictions in the country. *Id.* at 269. Applying the cause theory, the

5

court concluded "in the absence of clear language to the contrary, when the insured is being sued for negligent failure to provide security, 'occurrence' is defined by the immediate injury-producing act and not by the underlying tortious omission." *Id.* at 271. Thus, as two gunshots were the immediate cause of the injuries, each constituted an occurrence. *Id.* at 272.

Although there are no Florida cases which discuss the definition of "accident" in the context of an auto insurance policy, the Georgia Supreme Court has considered the definition in a case involving the liability coverage of an automobile policy based on a question certified by the United States District Court for the Middle District of Georgia. In *State Auto Property & Casualty Co. v. Matty*, 286 Ga. 611, 690 S.E.2d 614 (Ga. 2010), a vehicle insured by State Auto struck a bicyclist and then struck a second bicyclist within a second or two of each other. *Id.* at 611. The insurance policy stated that the liability limit was the "maximum limit of liability for all damages resulting from any one auto accident." *Id.* at 612. In addition, the policy contained a provision that this was the maximum liability limit regardless of the number of claims made or vehicles involved in the auto accident. *Id.* The policy did not define "accident." *Id.*

> The court employed the "cause" theory to determine the issue:
>
> Under this theory, the number of accidents is determined by the number of causes of the injuries, with the **court asking if " ' "[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." ' "** *Appalachian*, 676 F.2d at 61 (citations omitted). In the context of vehicle accidents involving multiple collisions that do not occur simultaneously (recognizing that it is almost impossible that such collisions can occur without any difference in time and place), courts look to whether, after the cause of the initial collision, the driver regained control of the vehicle before a subsequent collision, so that it can be said there was a second intervening cause and therefore a second accident.

*Id.* at 613–14 (emphasis supplied) (citations omitted). This construction, the court found, was consistent with the policy terms:

> The cause theory corroborates the intent of the parties to the insurance contract in this case. As previously noted, the term "each accident" appears in the limitation of liability section of the State Auto policy, which clearly contemplates that there

6

can be a single "accident" in which there are multiple vehicles, injured parties, and claims and provides that for that type of single accident, there will be a liability limit of $100,000.

*Id.* at 615–16.

Upon the *Matty* case returning to federal court, the court denied a motion for summary judgment on the issue of the number of accidents. *State Auto Prop. & Cas. Co. v. Matty*, 719 F. Supp. 2d 1377, 1381 (M.D. Ga. 2010). The court found the facts were in dispute as to whether the driver had regained control of her vehicle after hitting the first bicyclist so that a jury could consider her negligence in steering after the first impact to be a "second intervening cause and therefore a second accident." *Id.*

The facts in this case are the converse of *Matty*—one victim and two tortfeasors instead of two victims and one tortfeasor—but the policy language limiting coverage is nearly identical. Like the policy in *Matty*, the policy in this case provided a limit of liability for "each accident," regardless of the number of claims made or vehicles involved. Thus, the policy language contemplated that one accident might involve multiple vehicles, a not uncommon scenario in automobile accidents.

The trial court employed the *Matty* definition in its instruction: "[m]ultiple impacts will be considered one accident if there is but one proximate, uninterrupted, and continuing cause of injury." It also provided the jury with factors to consider in that determination, gleaned from *Matty* and other cases. *See, e.g.*, *Liberty Mut. Ins. Co. v. Rawls*, 404 F.2d 880, 880–81 (5th Cir. 1968). We agree with *Matty* as to the policy construction and the court's instruction was consistent with the cause theory and the policy language.

### Conclusion

Under the uninsured motorist policy provisions, USAA's limit of liability applied to one accident, regardless of whether it involved multiple vehicles. Whether the striking of appellant's vehicle by the hit and run driver and then by the uninsured motorist amounted to one accident or two was the central issue in the case. The trial court appropriately instructed the jury on how to resolve that issue. We therefore affirm as to all issues.

*Affirmed.*

CONNER and FORST, JJ., concur.

*　　　*　　　*

*Not final until disposition of timely filed motion for rehearing.*