[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13555

_____

D.C. Docket No. 1:16-cv-03058-SCJ

GRANGE MUTUAL CASUALTY COMPANY,

Plaintiff-Appellee,

versus

TERRI SLAUGHTER, et al.,

Defendants,

DAMITRA BAISDEN,
FOUR SEASONS TRUCKING, INC.,
FOUR SEASONS TRUCKING & GRADING, INC.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(May 1, 2020)

Before ED CARNES, Chief Judge, TJOFLAT, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

Driving a truck owned by Four Seasons Trucking ("FST"), Mark Lucas crossed the center line and collided with two vehicles—one right after the other. Grange Mutual Casualty Company ("Grange") insured the truck. But the truck was not listed on FST's policy. It was listed instead on the policy of Four Seasons Trucking & Grading ("T&G"), FST's sister company.

Grange sued Damitra Baisden (the driver of one of the impacted vehicles), FST, and T&G (collectively, "Defendants").[1] Grange sought declaratory relief, asking the district court to declare its obligations under three insurance policies— two issued to FST and one issued to T&G. The district court said coverage existed under the T&G policy but not the FST policies. It also said the chain of events constituted a single accident. Baisden, FST, and T&G now appeal, challenging the coverage ruling. FST and T&G also challenge the number-of-accidents ruling. FST owned the truck in question, but the truck was listed on T&G's insurance policy. The parties agree that this case turns on whether there was a change in the truck's legal status, such that FST could have "borrowed" its own truck back from T&G. Defendants contend the necessary change in legal status came in the form of

---

[1] Grange also sued the driver of the other impacted vehicle. That driver is not a party to this appeal.

2

a written lease.  But they failed to introduce at the summary judgment stage evidence showing that the lease gave exclusive use rights to T&G.  In the particular circumstances of this case, their failure to introduce such evidence means the district court rightly held that no reasonable factfinder could have found in their favor.  Although they introduced new evidence purporting to establish that the lease granted T&G exclusive use rights in their motion for reconsideration, the district court properly denied that motion, reasoning that the evidence could have been produced earlier.  Finally, we agree with the district court that, under the policies and under Georgia law, the events here constituted a single accident.  Accordingly, we affirm.

## I.  BACKGROUND

### A.  Underlying Facts

On October 15, 2015, Lucas, an FST employee acting in the course of his employment, was driving a dump truck owned by FST.  The work did not involve T&G.  Lucas collided with one vehicle, and he also collided with a vehicle being driven by Baisden.  The drivers of both vehicles filed separate suits against FST and Grange in Georgia state court—one in the State Court of Fulton County and the other in the State Court of DeKalb County.  According to Baisden's complaint, Lucas crossed the center line, collided with the car in front of her, and, immediately afterward, collided with her car.

3

While the two lawsuits were pending in state court, Grange brought a declaratory judgment action in the United States District Court for the Northern District of Georgia. Grange sought to understand its obligations under the insurance policies it issued to FST and T&G. As relevant here, Grange issued commercial automobile liability insurance policies to FST (the "FST policy") and T&G (the "T&G policy"). It also issued to FST a commercial umbrella policy, which applies only if the FST policy applies.

Although FST owned the truck Lucas was driving, the truck was not listed as a "Covered Auto[] You Own" on the FST policy. Instead, the truck was listed on T&G's policy. The question for the district court, then, was what Grange owed under any of these three policies.[2]

Certain evidence is particularly relevant to answering that question. Natalie Atkinson, president of FST and T&G, testified at her 2016 deposition that T&G never purchased or owned any trucks. She said FST owned the trucks and leased them to T&G. She said it "ha[d] been a few years" since FST had leased a truck to T&G. She further stated that when they "initially moved some of the trucks over, because they were owned by [FST]. . . [they] drew up a lease agreement to lease it to [T&G]." But she was "not sure where to find" the written lease agreement. When asked if the truck in question had been leased to T&G at the time of the

---

[2] Georgia law applies to all the policies.

4

accident, she responded, "I believe so." Nevertheless, she testified that Lucas was working only for FST, not for T&G, on the day of the accident. In other words, FST had allegedly borrowed its truck back from T&G, which had purportedly leased the truck.

## B.  The District Court's Orders

Because this appeal hinges on the parties' arguments regarding the district court's orders, we recount those orders in detail. We first examine the summary judgment order, and we then turn to the order denying reconsideration.

## 1.  Liability Under the T&G Policy

The district court first concluded that Grange was liable under the T&G policy. Under that policy, the truck, which was specifically listed (incorrectly) as a "covered" auto T&G "own[s]," thus qualified as "Any 'Auto'." To the district court, it did not matter that the truck was erroneously listed as "owned" by T&G, as "[t]here is no serious dispute that the truck qualifies as 'any "auto."'" Moreover, although Lucas was working for FST at the time of the accident, he had been added to the T&G policy as an insured. The policy required Grange to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Thus, Grange was liable under the T&G policy.

5

Grange does not appeal the finding of its liability under the T&G policy. But we discuss it because Baisden points to what she contends is an internally inconsistent remark in the district court's summary judgment order. In rejecting Defendants' argument that T&G "owned" the truck simply because it was listed as such in T&G's insurance policy, the district court stated, "The evidence before the Court all indicates that the truck was being leased by T&G, and thus was not an 'owned' auto." Baisden argues that this statement contradicts the court's next holding.

## 2.  Liability Under the FST Policy

The district court next determined Grange was not liable under the FST policy. That policy, unlike the T&G policy, does not provide liability coverage for "Any 'Auto'"; instead, it covers only "Specifically Described 'Autos'," "Hired 'Autos' Only," and "Nonowned 'Autos' Only." A "Specifically Described 'Auto[]'" is one listed in the declarations, and the truck was not listed there. Nor was the truck a "Nonowned 'Auto[]'." As discussed, FST owned the truck. So the question is whether the truck was a "Hired 'Auto[]'"—an auto FST "lease[d], hire[d], rent[ed] or borrow[ed]." As applicable here, did FST borrow the truck back from T&G?

The district court said it did not.[3]  It determined that, absent a "contractual relationship giving exclusive use rights to T&G," FST would have always been entitled to use of the truck—so it could not have "borrowed" it back.  With respect to evidence indicating there was a lease, FST and T&G pointed to affidavits of Natalie Atkinson (president of FST and T&G) and Audley Atkinson (FST's supervisor of operations).  Natalie's affidavit said that from "October 15, 2014 up through and including October 15, 2015," the truck "was under lease" from FST to T&G.  Audley's affidavit said that  he selected the truck as one of the vehicles to be leased from FST to T&G and that the truck "was under lease" from "October 15, 2014 up through and including October 15, 2015."  Grange countered by pointing to Natalie's 2016 testimony that FST had not leased a vehicle in "a few years."  Moreover, no written lease agreement was produced during discovery. The district court explained that Natalie's testimony was not fatal: a lease agreement can last for many years.  But, the district court opined, such an agreement would have to be in writing to comply with Georgia's statute of frauds. Even assuming such a writing existed, the district court explained that the problem was that the affidavits provided only a legal conclusion: an enforceable lease existed.  There was no evidence of lease payments, testimony regarding the length

---

[3] But the court did reject Grange's argument that FST could not possibly have borrowed back its own truck.

7

of the lease or its terms, or consideration T&G provided for the right to use the truck.  Said the court: "A party cannot baldly assert that a contract existed any more than they could flatly assert that the opposing party was negligent or committed a tort."[4]

### 3.  Number of Accidents

Finally, also at issue was the number of accidents that occurred under the T&G policy.  The district court concluded the events constituted a single accident.[5] Its conclusion had two bases.  First, it pointed to *State Auto Property and Casualty Co. v. Matty*, 690 S.E.2d 614 (Ga. 2010), where the Georgia Supreme Court adopted the "cause" theory to define the word "accident" in insurance policies. *See id.* at 617–18.  "Under this theory, the number of accidents is determined by the number of causes of the injuries, with the court asking if [t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage."  *Id.* at 617 (quotation marks omitted).

> In the context of vehicle accidents involving multiple collisions that do not occur simultaneously (recognizing that it is almost impossible that such collisions can occur without any difference in time and place), courts look to whether, after the cause of the initial collision, the driver regained control of the vehicle before a subsequent collision, so that it can be said there was a second intervening cause and therefore a second accident.

---

[4] Because it concluded Grange was not liable under the FST policy, the district court noted that there could be no liability under the umbrella policy.

[5] The number of accidents matters because the T&G insurance policy limits the amount that Grange will pay "Per Accident."

*Id.* Defendants did not dispute that if *State Auto* controlled there was one "accident."

But Defendants *did* dispute whether *State Auto* controlled.  They said the policies themselves provided a definition of "accident," which they indeed seem to do: "'Accident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"  The district court believed the policy definition comported comfortably with the rule announced in *State Auto*. But it alternatively rejected Defendants' argument that multiple collisions can never constitute the exact "same conditions," per the policy definition.  As the district court put it,

> [I]t is clear that the collisions in this case involved the "same conditions."
>
> On the same day, at the same time, on the same road, the truck "was sideswiped by [one] vehicle, and [then] . . . struck another vehicle." Notably, a single motor vehicle accident report was prepared, treating both collisions under the same accident number.  The description of the accident by the reporting officer and diagram demonstrating the events make clear that a single accident occurred.  Of particular import is the fact that the accident report provided the same "condition information" for both collisions.  This kind of information, not Defendants' unique interpretation, is what is ordinarily meant by "same conditions."  Both collisions occurred under the same lighting conditions, the same weather conditions, the same road conditions, the same traffic conditions, etc.

(citations omitted).  Moreover, the limit of insurance clause in the policies applies "[r]egardless of the number of . . . vehicles involved in the 'accident'."  The district

9

court concluded that Defendants' argument that any time separate collisions occur there are different "conditions" would read that language out of the contract. It also rejected Defendants' suggestion that any time there is a multi-auto collision, there are multiple accidents.

### 4. Motion for Reconsideration

Having obtained a favorable judgment only on the T&G policy, Defendants moved for reconsideration. In support, they supplied a new affidavit from Natalie Atkinson. Atkinson now testified to specific lease terms, such as T&G's sole use in exchange for listing the truck on its insurance policy. She also stated that she had "spent numerous hours" trying to find the writing but could not. She thus "believe[d] that the original of the lease was destroyed . . . when a tree fell on [a] storage unit[] during a thunder storm a few years ago." The electronic copy was destroyed when FST's "servers crashed several years ago, prior to 2015." In accordance with this affidavit, Defendants pointed to an exception to the best evidence rule that allows oral testimony to prove the contents of a writing when the writing has been lost.

The district court denied Defendants' motion. The court noted that Atkinson had originally testified that she was "not sure where to find" the written lease. But it also pointed to her earlier failure, identified in its summary judgment order, to testify regarding specific lease terms. Invoking *Michael Linet, Inc. v. Village of*

10

*Wellington*, 408 F.3d 757, 763 (11th Cir. 2005), the district court rejected Atkinson's belated testimony because a motion for reconsideration "is not a vehicle for introducing 'evidence that could have been raised prior to the entry of judgment.'"

\* \* \*

To recap: (1) The district court granted Defendants' motions for summary judgment in part, declaring Grange was liable under the T&G policy; and (2) the district court granted Grange's motion for summary judgment in part, declaring Grange was not liable under the FST (and accordingly umbrella) policy and that there was a single accident. It then rejected Defendants' attempt to amend the judgment. Only Defendants have appealed.

## II.  THE FST POLICY

Baisden focuses her briefing on the issue of policy coverage. Specifically, she argues that the district court erred in its finding that Grange is not liable under the FST policy.

"We review a summary judgment ruling de novo, viewing the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (quoting *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1282 (11th Cir. 2003)). We also review *de novo* the interpretation of an insurance

contract. *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008). Moreover, we "may affirm [the district court's] judgment on any ground that finds support in the record." *Wetherbee v. S. Co.*, 754 F.3d 901, 905 (11th Cir. 2014) (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001)).

As the Supreme Court has explained,

> Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Here, there is no genuine issue of material fact because Defendants did not establish an essential element of their case on which the district court concluded they would bear the burden of proof at trial: that a lease existed giving T&G "exclusive use rights" at the time of the accident. The facts indicate that FST was using the truck at the time of the accident. Because FST owned the truck, the parties accepted the premise that there had to be some change in the truck's legal status, presumably via a lease providing T&G exclusive use rights, for FST to

12

"borrow" back the truck from T&G.[6] Defendants' failure to produce any evidence

that T&G had exclusive use rights means that there was no genuine issue of

material fact and that Grange was entitled to judgment as a matter of law. *See id.*

at 323 (The "standard [for granting summary judgment] mirrors the standard for a

directed verdict . . . ." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986)).

But there are some problems with the district court's order. Baisden

correctly points out that the order appears to be internally inconsistent. In its

finding on the T&G policy, the district court remarked, "The evidence before the

Court all indicates the truck was being leased by T&G, and thus was not an

'owned' auto." It further stated that it was "undisputed that T&G leased the

truck." Later, of course, the district court found there was not enough evidence

that the lease agreement would establish T&G's exclusive use rights. The court

stated, "the evidence in the record indicates that no <u>legal</u> lease agreement between

FST and T&G existed in 2015." (Emphasis added.) At that point in its analysis,

the court was considering whether there was a genuine issue of material fact not

---

[6] We note that neither party has argued that it was unnecessary for T&G to have exclusive use rights to the truck in order for FST to borrow back a truck that it already owned. Thus, any argument by Defendants on that point is waived. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 1248, 1254 (11th Cir. 2011).

just about whether a lease existed but also about whether a "legal lease agreement" granting exclusive use rights existed.

Any discrepancy, however, is inconsequential. First, a big-picture point: The T&G policy holding is not at issue in this appeal. And we are reviewing *de novo* whether there was a genuine issue of material fact regarding the FST policy. As for the substance of the district court's order: The T&G policy holding was based entirely on the fact that the truck in question was "Any 'Auto'." The district court expressly noted that it did not matter whether the truck "was owned, rented, borrowed, leased, *etc*." Baisden tacitly acknowledges this point: "The district court found that by the policy's designating 'any auto,' it covered this Mack dump truck. Baisden does not challenge this conclusion on appeal." In the T&G policy analysis, then, the district court's remarks about the lease were dicta, nonessential to the holding that the truck was "Any 'Auto'" under that policy. In contrast, in the FST policy analysis, any contrary remarks about the missing lease were central to the holding.

Baisden also makes much of the district court's invoking Georgia's statute of frauds.[7] Baisden contends the statute of frauds is a "personal defense," so any argument based on the statute "would not inure to Grange, who was neither

---

[7] The statute provides that to make certain "obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him or her." O.C.G.A. § 13-5-30(a).

14

promisor nor promisee to the lease contract." Moreover, there are exceptions to the statute, including part performance. O.C.G.A. § 13-5-31.

We need not address the statute of frauds. The district court did not need to address it either. The court took Natalie Atkinson "at her word" that she could not find the written agreement that she testified existed.[8] As Baisden acknowledges, "The fact of a writing – even a missing writing – satisfies any statute of frauds concerns."

The real problem for Defendants is not the statute of frauds but the best evidence rule. The best evidence rule provides, "An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Under the specific circumstances of this case, Defendants needed to prove the content of the lease: they needed to show that there was "a contractual relationship giving exclusive use rights to T&G" at the time of the accident. At the summary judgment stage—the relevant focus here— Defendants did not introduce evidence that any exception to the best evidence rule applies. For instance, Rule 1004 of the Federal Rules of Evidence provides, "An

---

[8] Grange brings up, apparently for the first time on appeal, various federal regulations. Those regulations independently require a written agreement. Baisden disputes whether the regulations apply. But the dispute does not matter: we accept, as the district court did, that a writing existed. Natalie Atkinson testified to that fact, and at the summary judgment stage we accept that testimony as true. Accepting that a written lease existed, however, is not the same as accepting that the lease granted exclusive use rights, which is required under the particular circumstances of this case.

original is not required and other evidence of the content of a writing . . . is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; [or] (b) an original cannot be obtained by any available judicial process." True, Natalie Atkinson testified that she was "not sure where to find" the lease agreement. But that testimony does not come close to saying "all the originals [were] lost or destroyed." Atkinson's later testimony that she could not find the original—and had concluded the physical and electronic versions may have been destroyed—came as part of the motion to reconsider. In that motion, Defendants cited to Rule 1004 and argued that Atkinson's new affidavit excused them from the requirements of best evidence rule. But as discussed below, the motion to reconsider was not the place to bring up this testimony, which could have been addressed at summary judgment. In addition to the absence of the written lease, there was no evidence of lease payments, testimony regarding the length of the lease or its terms, or consideration T&G provided for the right to use the truck.

Baisden believes the district court overstated the lack of evidence. The truck was on T&G's policy, and T&G "paid a total premium of $4,965 to Grange to insure just that dump truck – almost 10% of the total auto premium under that policy." Baisden argues that T&G's making premium payments "was consistent with a commercial lease." It is a facially compelling point: why would T&G be

16

paying premiums on a truck it was merely borrowing without any exclusive use rights?

So, the argument seems to go, a reasonable juror might conclude there was a lease agreement. But the premise is false, as whether an enforceable contract exists is a legal, not a factual, determination. *See generally Lee v. Green Land Co., Inc.*, 538 S.E.2d 189 (Ga. Ct. App. 2000). Facts are certainly crucial to making the legal determination—and those facts are missing here. For example, we still do not know what consideration T&G gave FST for use of its truck. We know T&G paid insurance premiums. But it is not obvious how T&G insuring the truck *benefits FST*, especially since T&G would presumably be insuring the truck for its own use.[9] We might imagine an agreement where, as consideration, FST is able to borrow the truck at any time while T&G pays the insurance premiums. But we should not have to—and at this stage cannot—imagine anything. *Cf. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).

---

[9] Atkinson further testified that T&G had not done work for more than two years. Because we do not know when this lease began or its terms, we do not know whether T&G originally leased the truck to do work with it.

In sum, the dispositive question in the particular circumstances of this case is whether an enforceable lease granting exclusive use rights existed. At the summary judgment stage, there was not a genuine issue of material fact that such a lease existed. Natalie Atkinson testified that the lease had been reduced to writing but not that all originals had been lost or destroyed. The best evidence of the content of the lease is the writing itself. And even if an exception to the best evidence rule applied, there was not enough evidence of the writing's contents at the summary judgment stage to conclude an enforceable lease granting exclusive use rights existed.

### III.  THE MOTION FOR RECONSIDERATION

As discussed, following the district court's summary judgment order, Defendants attempted to supplement Natalie Atkinson's earlier testimony with a new affidavit regarding specific terms of the written lease—and the fact that all physical and electronic copies were now unavailable. The district court declined to reconsider its order on this basis.

"We review the denial of a motion for reconsideration for abuse of discretion." *Equity Inv. Partners, LP v. Lenz*, 594 F.3d 1338, 1342 (11th Cir. 2010).

The district court did not abuse its discretion in denying Defendants' motion for reconsideration. As it correctly explained, a party "cannot use a Rule 59(e)

18

motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc.*, 408 F.3d at 763. Defendants attempted to introduce evidence, including new testimony from Atkinson, that was available at the summary judgment stage. The district court properly rejected Defendants' attempt.[10]

Baisden contends that at the summary judgment stage there was sufficient evidence to create a genuine issue of material fact about the existence of a legally enforceable lease granting exclusive use rights. She again points to Natalie Atkinson's testimony: when asked whether the truck was leased at the time of the accident, Atkinson responded, "Yeah. It was on the Trucking & Grading policy." One can hardly fault the district court for not understanding the supposed subtext—that T&G paid to insure the truck in exchange for use of the truck.[11]

---

[10] In a footnote, the district court improperly cited *A. Atlanta AutoSave, Inc. v. Generali-U.S. Branch*, 498 S.E.2d 278 (Ga. Ct. App. 1998), for the proposition that "Georgia law . . . requires lessees to furnish their own insurance." That case deals with rental cars, not commercial leases. So the district court was wrong to suggest that T&G promised to do something it was already legally obligated to do. But once again, the suggestion was dictum. The district court went on to say expressly that it would "not reach the question of whether the new evidence demonstrates T&G provided adequate consideration."

[11] Baisden argues that the consideration argument was "specifically pointed out in summary judgment briefing." She points us to T&G's and FST's reply brief in support of their motion for summary judgment, where Natalie Atkinson's testimony about the truck being on T&G's policy is cited for the proposition that it was "unequivocal that on October 12, 2015, the subject truck being operated by defendant Mark Lucas was under lease." But neither the summary judgment reply brief nor Natalie Atkinson's testimony mentions consideration.

Oddly, Baisden later complains that "up to the point the district court entered its order, the consideration supporting a lease was never an issue." The existence of a lease granting exclusive use rights was certainly an issue, and consideration is an element of any lease.

19

After all, as discussed, it is not clear how this supposed arrangement benefits FST. If FST did not plan on using the truck, it could have chosen not to insure or operate it. What benefit did FST get for leasing the truck? We *still* do not know. *Cf.* O.C.G.A. § 13-3-42(a)–(b) ("To constitute consideration, a performance or a return promise must be bargained for by the parties to a contract. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.").

The affidavit was also the first time Atkinson stated the written lease agreement was possibly lost or destroyed. Had she so stated earlier, we might be facing a different case. But we take the case as it comes to us. The district court did not abuse its discretion in rejecting arguments based on evidence that could have been presented in the motion for summary judgment.

## IV. THE NUMBER OF ACCIDENTS

FST and T&G focus their briefing on convincing us that the district court erred in determining, in its summary judgment order, that there was a single accident.

---

Moreover, Baisden cannot have it both ways—*i.e.*, she cannot seriously assert that the issue was "specifically pointed out" in the briefing but also that it had never been discussed.

Finally, Baisden somewhat overstates Atkinson's testimony. Right after giving the answer at issue, Atkinson was asked directly: "Is it your understanding that as of that time that it had been leased by Four Seasons Trucking & Grading from Four Seasons Trucking, Incorporated?" She responded, "I believe so."

20

We review the grant of summary judgment, and the interpretation of an insurance contract, *de novo*. *See James River Ins. Co.*, 540 F.3d at 1274.

In Georgia, courts apply, by default, the cause theory to determine the number of accidents. *See State Auto*, 690 S.E.2d at 619 (establishing cause theory as the rule that applies "in the absence of a specific, contrary definition of 'accident'"). As the Georgia Supreme Court described the theory:

> In the context of vehicle accidents involving multiple collisions that do not occur simultaneously (recognizing that it is almost impossible that such collisions can occur without any difference in time and place), courts look to whether, after the cause of the initial collision, the driver regained control of the vehicle before a subsequent collision, so that it can be said there was a second intervening cause and therefore a second accident.
> . . .
> For the foregoing reasons, we adopt the cause theory for use in liability insurance cases in Georgia. We further hold that it applies to the insurance contract at issue in this case, being consistent with that contract read as a whole and in the absence of a specific, contrary definition of "accident."

*Id.* at 617, 619. Grange argues that the "district court properly concluded that the definition of 'accident' in the Grange policies conformed to the 'cause' theory as described in the *State Auto* decision."

FST and T&G counter that *State Auto* does not apply because the case merely sets a default rule. The default rule, they say, does not apply if the policy defines "accident." But FST and T&G misread *State Auto*. *State Auto* says the cause theory applies to a "contract read as a whole and in the absence of a *specific*,

21

*contrary* definition of 'accident.'" *Id.* at 619 (emphasis added). Here, despite FST and T&G's conclusory argument, the cause theory is consistent with the contract read as a whole. The contract contains neither a "specific" nor a "contrary" definition of accident. Indeed, the policies define accident as follows: "'Accident' *includes* continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'" (emphasis added). The term is not fully defined—it says what an accident includes, not what an accident is. Leaving the term open is not uncommon in Georgia. In fact, standard Georgia commercial general liability policies speak in terms of "occurrences," which they in turn define as "accidents": "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See "Occurrence"—"Accident"*, Ga. Prop. & Liab. Ins. Law § 4:16 (2018).

Because standard Georgia policies do not define "accident" (except to say, as here, what it includes), Georgia courts have needed to fill in the gaps. We return, then, to *State Auto*. That case involved an insured vehicle striking a bicyclist and then striking a second bicyclist. 690 S.E.2d at 616. The court determined the relevant inquiry was whether the driver regained control of the *insured automobile*, not whether some other conditions affected the bicyclists.[12]

_____

[12] FST and T&G argue that the two vehicles were not exposed to the "same conditions." They say that because one collision occurred after the other, both vehicles were exposed to

22

*See id.* at 617.  If the driver did not regain control, there was "one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *See id.*

Here, no evidence suggests, and FST and T&G do not argue, that Lucas regained control of the truck as he crossed the center line and collided with the two vehicles.  The police report diagram of the accident shows that the truck did not correct its path before striking the second vehicle.  The report notes that the truck "swerved into the southbound lanes and side-swiped Vehicle 2, causing Vehicle 2 to spin off the roadway."  The truck "then struck Vehicle 3 head-on in the southbound lane pushing both vehicles off the roadway into a ditch . . . ."  Even viewed in the light most favorable to Defendants, the evidence indicates that the truck moved into the southbound lane and, as an uninterrupted consequence of that move, hit both vehicles.

FST and T&G suggest that any time the insured vehicle separately collides with two other vehicles, even if only a single second has passed, there have been two accidents.  FST and T&G said as much at oral argument before this Court.  This approach is misguided.  The policies contain a limit of insurance clause, which applies "[r]egardless of the number of . . . vehicles involved in the

---

different conditions.  But that argument is backwards.  The truck is what is insured, not the other vehicles.

23

'accident'." The policies thus plainly contemplate that multiple vehicles can be involved in a single accident. FST and T&G's reading would eliminate this language from the contract, contrary to Georgia law. *See* O.C.G.A. § 13-2-2(4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."); *see also State Auto*, 690 S.E.2d at 617 ("Under the claimant's construction, the policy's $100,000 limitation of liability 'regardless of the number of . . . vehicles involved' would be meaningless in almost any collision involving multiple vehicles, as State Auto would have to pay $100,000 for each impact. That is plainly not the intent of the contract.").[13]

Finally, the district court focused on several conditions to which the truck was exposed. In particular, it pointed out that "[b]oth collisions occurred under the same lighting conditions, the same weather conditions, the same road conditions,

---

[13] FST and T&G contend that the policies do not require any collisions for liability to attach. In support, they point to the limit of insurance clause, which discusses pollution-related costs: "Regardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for the total of all damages and 'covered pollution cost or expense' combined, resulting from any one 'accident' is the Limit of Insurance of Liability Coverage shown in the Declarations." According to FST and T&G, because the policy will pay for certain covered pollution costs, "the Limit of Insurance clause contemplates a claim involving numerous vehicles but not a single collision." The confusing conclusion seems to be that their reading will not eliminate the "[r]egardless of the number of . . . vehicles involved in the 'accident'" language because of the possibility of a pollution-based "accident." It is true that the clause would apply if there was a collision-less "accident"— e.g., a contaminant spill from a truck. But FST and T&G's reading would mean the limit of insurance clause applies *only if* there is a pollution-based claim. That reading flies in the face of the fact that Grange must "pay for the total of *all* damages *and* 'covered pollution cost[s] or expense[s]'" (emphases added).

the same traffic conditions, etc." FST and T&G argue that these conditions are not, or at least there is not enough evidence that they were, what "result[ed] in 'bodily injury'." They read the policy this way: "'Accident' includes continuous or repeated exposure to the same *conditions resulting in* 'bodily injury' or 'property damage'" (emphasis added). Thus, they suggest, the "conditions" must be what causes bodily injury. We wonder how the conditions of this particular accident could ever be what causes bodily injury. But we need not resolve the dispute. We have already concluded that the definition of accident is not comprehensive. *State Auto* fills in the policies' interstices and dictates our conclusion: under these policies and under Georgia law, the multi-auto collision at issue in this case was a single accident.

## V.  CONCLUSION

The judgment of the district court is **AFFIRMED.**