[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14032

_____

D.C. Docket No. 6:17-cv-02208-JA-EJK

LLOYD WICKBOLDT,

Plaintiff - Appellant,

versus

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,
A foreign corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 1, 2020)

Before MARTIN, LUCK, and BRASHER, Circuit Judges.

MARTIN, Circuit Judge:

Lloyd Wickboldt appeals the District Court's order denying him summary judgment and granting summary judgment to Massachusetts Mutual Life Insurance Co. ("MassMutual"). He claims the terms of his disability policy, and attached riders and other documents, entitle him to a cost of living adjustment in addition to his monthly disability benefit for the rest of his life. After careful consideration, and with the benefit of oral argument, we affirm the District Court's order.

## I.  FACTUAL BACKGROUND

In 1985, Dr. Wickboldt, then a 33-year-old dermatologist, bought a disability insurance policy from MassMutual's predecessor.[1] Dr. Wickboldt purchased a basic policy (the "Basic Policy") as well as a Cost of Living Rider (the "COLA Rider"). One year later he bought a Lifetime Total Disability Benefits Rider (the "Lifetime Rider"). We'll refer to these documents collectively as the "policy documents."

In 2000, when he was 48 years old, Dr. Wickboldt became totally disabled. MassMutual began paying Dr. Wickboldt $8,000 per month under the Basic Policy. After one year, MassMutual also began paying Dr. Wickboldt an additional sum under the COLA Rider. From May 2015 to August 2017, Dr. Wickboldt was receiving about $16,000 per month in disability benefits under the

---

[1] The fact that the disability policy was originally issued by a different company (which MassMutual acquired) has no impact on this case.

Basic Policy and the COLA Rider.  But after September 1, 2017, and according to its interpretation of the policy documents, MassMutual stopped paying Dr. Wickboldt monthly benefits under the Basic Policy as modified by the COLA Rider.  It then started paying Dr. Wickboldt's monthly payments of $8,000, which was the new calculation of benefits provided under the Lifetime Rider.  Dr. Wickboldt, however, claims he is entitled to the additional COLA Rider benefits for the rest of his life.  He filed suit to recover those benefits.

In December 2018, Dr. Wickboldt filed for summary judgment. MassMutual opposed Dr. Wickboldt's motion.  A few months later, the District Court issued an order denying Dr. Wickboldt's motion for summary judgment and directing the clerk to enter judgment for MassMutual.  The District Court found that the policy documents were not ambiguous and the plain language indicated that, "after September 1, 2017, Dr. Wickboldt is entitled to receive $8,000 in benefits under the Lifetime Rider but is not entitled [to] benefits under the Basic Policy or to past or future benefit increases under the COLA Rider."  The District Court's finding was based on a termination provision in the COLA Rider, which the District Court said made "clear that benefit increases would not be paid beyond September 1, 2017—the policy Anniversary on or after Dr. Wickboldt's 65th birthday."  The District Court thus rejected each of Dr. Wickboldt's theories of interpretation.

3

## II.  THE POLICY DOCUMENTS

The Basic Policy sets forth several definitions that apply with equal force to the terms in the attached riders.  For example, "Maximum Benefit Period" is defined as "The maximum length of time we'll pay benefits, whether for total disability, residual disability or a combination of both."  The Basic Policy pays out benefits for Total Disability, but MassMutual will "only pay up to the maximum benefit period."

The COLA Rider describes itself as "provid[ing] monthly benefit increases while you're totally or residually disabled."  In relevant part, the COLA Rider provides:

> **When We'll Pay Monthly Benefit Increases.**  We'll pay monthly benefit increases while you're receiving total or residual disability benefits.
>
> . . .
>
> **How Long We'll Pay Benefit Increases.**  While you're totally or residually disabled, we'll pay benefit increases until the earliest of:
>
> - the date your total or residual disability ends;
> - the date the maximum benefit period under this rider ends; [or]
> - the anniversary on or after your 65th birthday.
>
> . . .
>
> **Termination.**  This rider will end on the earliest of the following dates:
>
> - 31 days after the due date of any unpaid premium;

4

- as of the next premium due date upon your written request;
- the anniversary on or after your 65th birthday; [or]
- the date that your policy ends.

The Lifetime Rider says it "provides monthly total disability benefits to be paid beyond the Anniversary on or after your 65th birthday.  Benefits will be paid for life."  The Lifetime Rider also includes the following terms:

> **When We'll Pay Monthly Total Disability Benefits.**  If you're eligible,[2] your monthly benefits under this rider will start after the Anniversary on or after your 65th birthday.  We'll make the first payment 1 month after that Anniversary.  We'll continue to make monthly payments as long as you remain totally disabled.
>
> **Monthly Total Disability Benefit.**  The largest amount of monthly benefit you will receive under this rider is shown on the current Coverage Page of your policy.
>
> . . .
>
> **Termination.**  This rider will end on the earliest of the following dates.
>
> - 31 days after the due date of any unpaid premium,
> - as of the next premium due date upon your written request,
> - the Anniversary on or after your 65th birthday,[3] [or]
> - the date that your policy ends.

---

[2] There is no dispute that Dr. Wickboldt is eligible for benefits under the Lifetime Rider.

[3] We do not read this termination provision as being in conflict with the provision describing when benefits begin.  Because the purpose of the Lifetime Rider "is to provide benefits . . . beyond the age of 65," this termination provision makes clear that the Lifetime Rider terminates at age 65 if the insured does not become totally disabled before the age of 65. See Oral Argument Recording at 29:15–31:03 (Nov. 18, 2020).

Finally, the "Coverage Page" referred to in the Monthly Total Disability Benefit under the Lifetime Rider sets forth, in pertinent part:

| EFFECTIVE DATE | COVERAGE | MONTHLY BENEFIT | MAXIMUM * BENEFIT PERIOD | ANNUAL PREMIUM |
|---|---|---|---|---|
| SEP 01 1985 | BASIC MONTHLY BENEFIT WITH ADJUSTABLE BENEFIT | $8,000 | TO 65 THEREAFTER | $1,940.20 $3,049.00 |
| SEP 01 1985 | PARTIAL DISABILITY | $4,000 | | $360.00 |
| SEP 01 1986 | LIFETIME ACCIDENT/SICKNESS | $8,000 | | $475.20 |
| SEP 01 1985 | COST OF LIVING RIDER MAXIMUM 7.50% | | | $763.20 |
| SEP 01 1985 | OWN OCCUPATION/ PRESUMPTIVE DIS RIDER | $8,000 | THEREAFTER | $220.00 $368.80 |

YOUR MAXIMUM MONTHLY BENEFIT IS $8,000

The asterisk in Maximum Benefit Period refers to the statement that "[y]our benefit period for disability is your specified benefit period, but not beyond SEP 01 2017. . . .  Your benefit period may be extended beyond SEP 01 2017 if you qualify for benefits under the Lifetime Accident/Sickness Rider.  See your rider for details."

### III.  STANDARD OF REVIEW

We review de novo a summary judgment ruling, viewing the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.  Grange Mut. Cas. Co. v. Slaughter, 958 F.3d 1050, 1056 (11th Cir. 2020).  We also review de novo the interpretation of an insurance contract.  Id.

6

## IV. DISCUSSION

"Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." See Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). And in construing insurance contracts, we must read the policy documents as a whole, "endeavoring to give every provision its full meaning and operative effect." Id. (quotation marks omitted). We must also avoid simply concentrating on certain provisions to the exclusion of others. Id.

Dr. Wickboldt argues that the Lifetime Rider "altered and enhanced" the termination provisions in the Basic Policy and the COLA Rider in such a way as to entitle him to COLA Rider benefits after the Lifetime Rider benefits begin. He says the Lifetime Rider expressly "extended the maximum benefit period for all of Wickboldt's 'monthly, total disability benefits' to which he was entitled under his entire Policy 'for life,'" so the Lifetime Rider "did not just extend the entitlement to benefits under only [that] portion of the Policy."[4] MassMutual, however, says that the COLA Rider unambiguously limited the duration of coverage—in two separate provisions—to the anniversary after Dr. Wickboldt's 65th birthday. In

---

[4] Dr. Wickboldt also says that if his interpretation and MassMutual's interpretation of the policy documents are both reasonable, then we should conclude the policy is ambiguous and construe it in his favor. However, because Dr. Wickboldt does not argue that any provisions of the policy documents are indeed ambiguous, he has failed to "plainly and prominently" raise this argument and has therefore abandoned it. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014).

7

MassMutual's view, the Lifetime Rider neither extends monthly benefit increases under the COLA Rider nor renews any other provision in the Basic Policy.

We thus begin with Dr. Wickboldt's contention that the Lifetime Rider extended all benefits he was receiving on the date the Lifetime Rider went into effect. We do not read the Lifetime Rider to extend benefits under either the Basic Policy or the COLA Rider. The Lifetime Rider contains its own benefits provision, beginning one month "after the Anniversary on or after your 65th birthday" and awarding "monthly total disability benefits [that will] be paid beyond the Anniversary on or after your 65th birthday . . . for life." These benefits are "base[d] . . . on your loss of income" and "multipl[ied] . . . by the ratio of your loss of income to your predisability income." In other words, the Lifetime Rider creates a new set of benefits—wholly unrelated to benefits paid out under the Basic Policy and based on a new means of calculating those benefits—that are not due to be paid until one month after the Anniversary on or after Dr. Wickboldt's 65th birthday. By the time Lifetime Rider benefits begin, benefits under both the Basic Policy and the COLA Rider benefits have ended. Dr. Wickboldt agreed with this interpretation before the District Court. See, e.g., R. Doc. 34: 2–3 (stating that base monthly benefits are paid "only until the policy anniversary date following his sixty-fifth birthday, or until September 1, 2017"). Based on the plain,

8

unambiguous language of the policy documents,[5] there is nothing to support Dr. Wickboldt's argument that the Lifetime Rider extends, restarts, or revives benefits under the COLA Rider. See Ruderman, 117 So. 3d at 948.

Dr. Wickboldt also relies on Colt v. Massachusetts Mutual Life Insurance Co., 2012 WL 1739145 (Mass. Super. Ct. May 1, 2012) (unpublished), to advance his Lifetime Rider-extension argument. In Colt, the court interpreted a policy that appears to be identical to the one Dr. Wickboldt purchased. See id. at *1–3. The Colt court found the Lifetime Rider extended payment of total disability benefits "despite clear language" limiting payment of benefits to age 65. Id. at *5. This was based, in part, on MassMutual's concession "that the Lifetime Rider acts to extend the basic monthly benefit for life," as reflected in the Coverage Page. Id. The court thus rejected the argument that the Lifetime Rider did not also extend the COLA Rider benefit, which was also reflected in the Coverage Page. See id. Lending further support, the court said, was the asterisk following "Maximum Benefit Period" on the Coverage Page, which said that "your benefit period may be extended . . . if you qualify for benefits under the [Lifetime Rider]." Id.

---

[5] Not only has Dr. Wickboldt failed to point to any ambiguous provision, see supra at 7 n.4, but we do not read the policy documents as being ambiguous. Under Florida law, ambiguities arise only if the "policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage." Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007). There is one reasonable interpretation of the policy documents here, and it does not support Dr. Wickboldt's position.

MassMutual has not made the concession here that it did in <u>Colt</u>.  Neither do we read the Coverage Page as being inconsistent with the termination provisions in the Basic Policy and the COLA Rider.[6]  Rather, the Coverage Page explains exactly how much Dr. Wickboldt is entitled to under the Basic Policy and each Rider.  Based on the plain meaning of the policy documents, the maximum monthly benefits to which Dr. Wickboldt is entitled is $8,000—exactly what he is receiving under the Lifetime Rider.  <u>See</u> <u>Ruderman</u>, 117 So. 3d at 948.

## V.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the District Court's order granting MassMutual summary judgment.

---

[6] The parties presented the District Court with two different versions of the Coverage Page.  Dr. Wickboldt seems to imply that these are inconsistent, pointing out that the copy he provided "is blank in the column for 'Maximum Benefit Period' for the row for the [COLA] Rider," whereas MassMutual's copy says "TO 65" in the row for the COLA Rider.  Dr. Wickboldt says his version, which does not contain a maximum benefit period, should control.  But even when viewing the Coverage Page in the light most favorable to Dr. Wickboldt, <u>see</u> <u>Grange Mut.</u>, 958 F.3d at 1056, we are still required to read the policy documents as a whole, <u>Ruderman</u>, 117 So. 3d at 948.  And because the Coverage Page does not expressly contradict the termination provisions in the COLA Rider, we must endeavor to give them their full meaning and operative effect.  <u>See</u> <u>id.</u>